IN THE DISTRICT COURT OF THE VIRGIN ISLANDS
DIVISION OF ST. THOMAS AND ST. JOHN

---

ERIKA A. KELLERHALS,               )
                                   )
              Plaintiff,           )
                                   )
vs.                                )  CIVIL NO. 2009-90
                                   )
INTERNAL REVENUE SERVICE,          )
                                   )
              Defendant.           )
_____  )


REPORTER'S TRANSCRIPT

MOTIONS HEARING

Thursday, August 25, 2011


---

BEFORE:        THE HONORABLE CURTIS V. GOMEZ
               Chief Judge


APPEARANCES:   CHRIS KROBLIN, ESQ.
               ERIKA KELLERHALS, ESQ.
               KELLERHALS FERGUSON LLP
               PO BOX 608
               ST. THOMAS, VI 00804


                  For the Plaintiff

               DEPARTMENT OF JUSTICE, TAX DIVISION
               BY:  GERALD ALAN ROLE, ESQ.
               PO BOX 227
               WASHINGTON, DC 20044


                  For the Defendant
                  ---


COURT REPORTER:   CHANDRA R. KEAN, RMR
                  Official Court Reporter
                  Virgin Islands District Court
                  St. Thomas, Virgin Islands

1                          INDEX

2

3      ARGUMENT BY THE PLAINTIFF                    4

4      ARGUMENT BY THE DEFENDANT                   21

5      ARGUMENT BY THE PLAINTIFF                   55

6      ARGUMENT BY THE DEFENDANT                   62

7      FURTHER PROCEEDINGS / SCHEDULING            64

8

            (Court recessed)

9

10                          ---

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                          PROCEEDINGS

2

09:59:46   3         (Court called to order at 9:57 a.m.)

10:03:14   4              THE CLERK:  Erika Kellerhals versus Internal

10:03:20   5    Revenue Service.

10:03:20   6              MR. KROBLIN:  Good morning, Your Honor.  Chris

10:03:22   7    Kroblin on behalf of Erika A. Kellerhals, PC.

10:03:25   8              THE COURT:  Okay.  Good morning, Attorney

10:03:27   9    Kroblin.

10:03:28  10              MR. ROLE:  Good morning, Your Honor.  Gerald

10:03:29  11    Role for the Internal Revenue Service.

10:03:32  12              THE COURT:  Okay.  Good morning, Attorney --

10:03:34  13    Role?  Say your last name again.

10:03:37  14              MR. ROLE:  Role, R-o-l-e.

10:03:39  15              THE COURT:  Role.  Got it.  All right.

10:03:42  16        Okay.  We have cross-motions here, do we not?

10:03:46  17              MR. KROBLIN:  Yes, Your Honor.

10:03:47  18              THE COURT:  All right.  And this is a FOIA

10:03:51  19    initiation, FOIA action, right?

10:03:54  20              MR. KROBLIN:  That's correct, Your Honor.

10:03:55  21              THE COURT:  All right.  Why don't we start with

10:03:58  22    this, Attorney Kroblin.  Tell us what it is that the

10:04:01  23    plaintiff seeks, what it is that the plaintiff has

10:04:03  24    received, and what it is that is missing.  And then

10:04:07  25    we'll go to the United States and find out why it's

| | | |
|---|---|---|
| 10:04:09 | 1 | missing. |
| 10:04:11 | 2 | MR. KROBLIN:  May I approach the podium? |
| 10:04:13 | 3 | THE COURT:  Yes. |
| 10:04:18 | 4 | ARGUMENT BY THE PLAINTIFF |
| 10:04:18 | 5 | MR. KROBLIN:  Your Honor, this case initiated |
| 10:04:19 | 6 | from a FOIA request which, in essence, requests |
| 10:04:23 | 7 | information relating to a particular notice issued by |
| 10:04:26 | 8 | the IRS, which is Notice 2007-19 -- 2007-19.  This is a |
| 10:04:36 | 9 | notice relating to the Statute of Limitations as it |
| 10:04:39 | 10 | applies to taxpayers in the Virgin Islands that declare |
| 10:04:43 | 11 | themselves to be bona fide residents of the Virgin |
| 10:04:48 | 12 | Islands. |
| 10:04:48 | 13 | And to put this case in context, Your Honor, why |
| 10:04:51 | 14 | this case is important, in 2004 the IRS began a large |
| 10:04:55 | 15 | audit of taxpayers in the Virgin Islands.  And at the |
| 10:04:58 | 16 | outset, the agents sent out mini-requests for waivers of |
| 10:05:04 | 17 | the Statute of Limitations for the exams, everyone |
| 10:05:07 | 18 | understanding the mirror code applying here, and that |
| 10:05:10 | 19 | Section 6501 of the Code, the three-year Statute of |
| 10:05:14 | 20 | Limitations, applied. |
| 10:05:14 | 21 | THE COURT:  You're saying they sent out |
| 10:05:17 | 22 | requests for waivers? |
| 10:05:19 | 23 | MR. KROBLIN:  Yes, for waivers of the Statute |
| 10:05:22 | 24 | of Limitations for conducting their exam. |
| 10:05:24 | 25 | And so practitioners and agents alike both |

10:05:27  1    understood that, pursuant to the mirror code, 6501 would

10:05:30  2    impose a three-year Statute of Limitations on filings

10:05:33  3    with the IRB.  And that was the law, Your Honor, and

10:05:39  4    what everyone understood the law to be.

10:05:41  5        However, IRS -- the IRS decided it did not like

10:05:44  6    this law and issued what was then Notice 2007-19,

10:05:49  7    stating that for taxpayers who pay over $75,000 to the

10:05:55  8    IRB, that, no, in fact, the Statute of Limitations does

10:05:57  9    not run, and we can basically --

10:05:59  10        THE COURT:  Whose tax liability is in excess of

10:06:02  11   75,000, or whose income is in excess of 75,000?

10:06:06  12        MR. KROBLIN:  It's gross income in --

10:06:07  13        THE COURT:  Gross income in excess.  All right.

10:06:09  14   Not taxes paid.

10:06:11  15        All right.  Go ahead.

10:06:11  16        MR. KROBLIN:  Right.  And the gross income

10:06:13  17   requirement is actually defined in the notice itself.

10:06:16  18        And so, and basically this change was made without

10:06:20  19   public comment or without, we believe, the authority of

10:06:22  20   the IRS to actually make a rule change that would alter

10:06:26  21   what the law, the code, actually says.  So we think it

10:06:30  22   was done without authority.

10:06:31  23        In any event, this case is about us trying to get

10:06:35  24   documentation to explain why the rule change was made

10:06:40  25   and to help understand exactly what happened.

10:06:45  1          And so, Your Honor, we made a request for all

10:06:48  2   documents related to this 2007-19 notice, and generally

10:06:53  3   the Statute of Limitations.

10:06:55  4          The government responded with 3,699 pages of

10:07:02  5   documents.  And of those documents, they provided us

10:07:06  6   with an affidavit from the disclosure specialist, the

10:07:12  7   declaration of Hartford, an attorney, who withheld 1,409

10:07:18  8   pages of documents in full, and 307 in part, claiming

10:07:23  9   various exemptions under the FOIA Statute.

10:07:25  10         We did do some --

10:07:28  11         THE COURT:  Well, tell me a little bit more

10:07:31  12  about what it is you want.  I know you received, what,

10:07:34  13  over 3,000 pages.  That's a number.  But I want to know

10:07:38  14  the category.

10:07:39  15         What is it that you want?  Because it seems pretty

10:07:42  16  broad.

10:07:42  17         Everything that's in relation to 2007-19, is that

10:07:46  18  what you want?

10:07:46  19         MR. KROBLIN:  That's correct, Your Honor, and

10:07:47  20  the Statute of Limitations with regard --

10:07:50  21         THE COURT:  You acknowledge that there are

10:07:51  22  certain things that are excepted from disclosure,

10:07:54  23  correct?

10:07:54  24         MR. KROBLIN:  Yes, we do, Your Honor.

10:07:55  25         THE COURT:  So, saying "everything" might

| | | |
|---|---|---|
| 10:07:56 | 1 | include some of those things that are excepted, correct? |
| 10:07:59 | 2 | MR. KROBLIN:  That's correct. |
| 10:08:00 | 3 | THE COURT:  So tell me what the things are that |
| 10:08:01 | 4 | you believe are not excepted that you did not get. |
| 10:08:05 | 5 | MR. KROBLIN:  Yes, Your Honor. |
| 10:08:06 | 6 | We've actually listed them in our counter-statement |
| 10:08:08 | 7 | of material facts, one by one, listed them out.  And |
| 10:08:15 | 8 | that's for each objection. |
| 10:08:17 | 9 | So we've claimed in these 127 objections, that's |
| 10:08:20 | 10 | 127 documents that we've objected to.  And I could go |
| 10:08:25 | 11 | through one by one with each document, but I thought it |
| 10:08:27 | 12 | might be more -- |
| 10:08:28 | 13 | THE COURT:  No, don't do that. |
| 10:08:30 | 14 | MR. KROBLIN:  Yeah.  Sorry -- |
| 10:08:32 | 15 | THE COURT:  Go ahead. |
| 10:08:32 | 16 | MR. KROBLIN:  I thought it might be more |
| 10:08:35 | 17 | helpful to simply just -- there are a few categories of |
| 10:08:38 | 18 | exemptions claimed, and I could address those areas, and |
| 10:08:41 | 19 | maybe by way of example, perhaps, show one of the |
| 10:08:44 | 20 | actual -- |
| 10:08:45 | 21 | THE COURT:  Okay.  Go right ahead. |
| 10:08:47 | 22 | MR. KROBLIN:  Okay.  Thank you, Your Honor. |
| 10:08:50 | 23 | And Your Honor, just to say that we cited the case |
| 10:08:52 | 24 | law in our brief, but we understand that the District |
| 10:08:55 | 25 | Court may grant summary judgment to the government in a |

10:08:57  1    FOIA case only if the agency affidavits describe the

10:09:01  2    documents withheld, and the justification for

10:09:04  3    nondisclosure in enough detail and with sufficient

10:09:07  4    specificity to demonstrate that the exemption applies.

10:09:12  5        With regard to the first exemption, this, this is

10:09:16  6    in our brief at section 4.  This is the exemption 3,

10:09:21  7    which is basically the third-party taxpayer information

10:09:24  8    exemption.

10:09:25  9        Of course, we acknowledge that this is exempt

10:09:29  10   information, third-party taxpayer information.  However,

10:09:32  11   if you look at the -- we've made three objections to

10:09:39  12   this.  And the first one, if you read our first

10:09:41  13   objection, is that --

10:09:43  14           THE COURT:  So what you're saying, you don't

10:09:44  15   want the income tax returns from anyone other than your

10:09:48  16   client, and really you don't even need that?

10:09:51  17           MR. KROBLIN:  Right.  That's correct, Your

10:09:52  18   Honor.

10:09:52  19           THE COURT:  All right.  Go ahead.

10:09:53  20           MR. KROBLIN:  But they've cited -- they claimed

10:09:55  21   third-party taxpayer information.  And in their

10:09:58  22   explanation they say, well, this -- in exemption number

10:10:01  23   one that we have listed here, that it pertains to a

10:10:04  24   litigation work product document that was prepared in

10:10:08  25   anticipation of litigation.

10:10:10   1         And Your Honor, we submit that work product claims

10:10:13   2   are not of sufficient factual basis to assert

10:10:16   3   third-party taxpayer exemption.  That's the basis of

10:10:21   4   that objection --

10:10:22   5         THE COURT:  You don't dispute that there's some

10:10:23   6   independent basis that the privileges recognize, to the

10:10:27   7   extent it's valid.

10:10:29   8         MR. KROBLIN:  And, Your Honor, yes.

10:10:31   9         THE COURT:  You're just saying it's just not

10:10:32  10   valid here?

10:10:33  11         MR. KROBLIN:  It's not valid here under --

10:10:35  12         THE COURT:  For the specific document that they

10:10:37  13   raise the objection for, or category of documents.

10:10:40  14         MR. KROBLIN:  That's exactly correct, Your

10:10:40  15   Honor.

10:10:41  16       And it brings us to a broader point which is

10:10:44  17   throughout this --

10:10:45  18         THE COURT:  Because you just can't say, "We

10:10:46  19   anticipate litigation in general, and so everything that

10:10:50  20   might relate to that is work product."

10:10:52  21         MR. KROBLIN:  Right.  Well that is true, Your

10:10:56  22   Honor.

10:10:56  23       And we have a problem with, the affidavit sets

10:10:59  24   out -- it's a sworn-to affidavit and it sets out the

10:11:02  25   reason for the exemption claimed.

| | |
|---|---|
| 10:11:06 | 1 |
| 10:11:11 | 2 |
| 10:11:13 | 3 |
| 10:11:17 | 4 |
| 10:11:19 | 5 |
| 10:11:20 | 6 |
| 10:11:25 | 7 |
| 10:11:27 | 8 |
| 10:11:29 | 9 |
| 10:11:33 | 10 |
| 10:11:37 | 11 |
| 10:11:39 | 12 |
| 10:11:43 | 13 |
| 10:11:46 | 14 |
| 10:11:51 | 15 |
| 10:11:53 | 16 |
| 10:11:59 | 17 |
| 10:11:59 | 18 |
| 10:12:06 | 19 |
| 10:12:08 | 20 |
| 10:12:09 | 21 |
| 10:12:11 | 22 |
| 10:12:12 | 23 |
| 10:12:16 | 24 |
| 10:12:18 | 25 |

However, to just respond to us and say, "Oh, well, that's attorney work product; we want to change exemptions claimed now later on in a letter by counsel," I think is insufficient without an amendment of the affidavit.

In any event, Your Honor, we think -- so with regard to any of these that have been changed, we don't think that it's fair to us because it makes this whole process incredibly unwieldy. And we have tried to boil it down in our statement of undisputed facts, just gave the claimed exemption, our objection, and their response, if any.

But to move to another category, Your Honor, is the treaty-related documents. The government has withheld documents regarding to this, numerous documents, and we only have objections to 11, 11 of the documents withheld.

The treaty-related exemption says that treaty-related information can be withheld if --

THE COURT: You're not trying to get any convention documents, are you?

MR. KROBLIN: No. We're trying to --

THE COURT: All right. Go ahead.

MR. KROBLIN: And so there's five reasons, enumerated reasons, A through E, that we've listed out.

10:12:22  1          Agreements entered into with the competent

10:12:24  2     authority, they can be withheld.  Applications for

10:12:26  3     relief under a tax convention can be withheld.

10:12:28  4     Background information can be withheld.  Documents

10:12:31  5     implementing such agreements can be withheld.  And

10:12:32  6     information exchanged -- and this is the important

10:12:34  7     one -- information exchanged pursuant to a tax

10:12:37  8     convention, which is treated as confidential or secret

10:12:39  9     under the tax convention.

10:12:40  10          And the government has cited a case, Pacific

10:12:45  11    Fisheries, and they rely on it extensively throughout

10:12:48  12    their brief.  And in that case, Your Honor -- it's a

10:12:51  13    Ninth circuit case, and they say:  Well, any

10:12:52  14    information -- the government asserts -- uses this case

10:12:54  15    to say any information that is basically related to a

10:12:58  16    tax convention can be withheld.

10:12:59  17          And that's not the holding of the Pacific

10:13:04  18    Fisheries.  Pacific Fisheries basically says the

10:13:06  19    District Court properly found the exemption to exist,

10:13:09  20    because the District Court concluded that, one, it was

10:13:12  21    information related to the tax convention, and, two,

10:13:15  22    that the tax convention -- and it cites Article 25 of

10:13:18  23    that particular convention that was applicable there --

10:13:21  24    made these documents confidential, treated these

10:13:25  25    documents as confidential.

| | | |
|---|---|---|
| 10:13:26 | 1 | Nowhere do they cite any provision of any tax |
| 10:13:29 | 2 | convention that makes these documents confidential. |
| 10:13:32 | 3 | So that's largely the claim with regard to this |
| 10:13:35 | 4 | objection. |
| 10:13:39 | 5 | And as stated in our brief, 4 through 10, I mean -- |
| 10:13:45 | 6 | sorry, 4 through 14 are the main objections which we've |
| 10:13:49 | 7 | asserted. |
| 10:13:50 | 8 | THE COURT:  All right. |
| 10:13:55 | 9 | MR. KROBLIN:  Moving on, Your Honor -- and this |
| 10:13:56 | 10 | is the big objection -- is the FOIA Exemption 5, which |
| 10:13:59 | 11 | is, can be broken down into two parts, one is the |
| 10:14:02 | 12 | government deliberative privilege part.  This is the |
| 10:14:04 | 13 | first part. |
| 10:14:06 | 14 | And under that deliberative process privilege, the |
| 10:14:10 | 15 | government can claim an exemption if the materials were |
| 10:14:14 | 16 | generated before the adoption of an agency policy, and |
| 10:14:17 | 17 | they reflect the give and take of the deliberative or |
| 10:14:21 | 18 | consultive process. |
| 10:14:22 | 19 | This is distinguished by -- from factual documents. |
| 10:14:26 | 20 | A simple factual document is not sufficient, and we |
| 10:14:30 | 21 | don't think documents relied on is sufficient.  It has |
| 10:14:34 | 22 | to be a document that truly shows the give and take, to |
| 10:14:36 | 23 | protect the consulting process.  And we understand that. |
| 10:14:40 | 24 | So, Your Honor, if I could turn to -- |
| 10:14:42 | 25 | THE COURT:  So it sounds like you agree with |

10:14:44  1   the government, then.

10:14:47  2           MR. KROBLIN:  Well, I think that there is a

10:14:48  3   deliberative process privilege.  I agree that that

10:14:52  4   exists.  I don't agree that -- for instance, item number

10:14:54  5   15 in our brief is an internal memo from Ms. Dusenberry

10:14:57  6   to Ed Williams, special counsel, regarding application

10:14:59  7   of Section 6501, Statute of Limitations, used to help

10:15:03  8   formulate the position of the Service prior to the

10:15:06  9   issuance of the formal guidance on the issue of

10:15:08  10  application of 6501 to USVI residents.  Withheld.  And

10:15:12  11  it's withheld under the deliberative process privilege.

10:15:15  12      Well, the internal memo itself is used -- just

10:15:19  13  because it was used and relied on to form a later

10:15:22  14  position, doesn't mean the internal memo itself contains

10:15:25  15  the deliberative process --

10:15:27  16          THE COURT:  Well, does it reflect an opinion or

10:15:28  17  a recommendation?

10:15:31  18          MR. KROBLIN:  It --

10:15:32  19          THE COURT:  Would you agree that if something

10:15:33  20  reflects a recommendation or an opinion, it could

10:15:36  21  possibly be under the umbrella of the deliberative

10:15:39  22  process?

10:15:40  23          MR. KROBLIN:  I would agree.  And had they used

10:15:41  24  those magic words in their claim for exemption, I

10:15:45  25  probably would be not standing before you arguing this

10:15:48  1    objection.

10:15:48  2        But I find that they don't say that.  And even in

10:15:52  3    their response, they don't provide any additional

10:15:57  4    statement that it was --

10:15:58  5        THE COURT:  So you're saying the level of

10:16:00  6    specificity required in their response is not sufficient

10:16:04  7    to give them the relief that they want, which is

10:16:07  8    nondisclosure.

10:16:08  9        MR. KROBLIN:  Yes, Your Honor.  Yes, Your

10:16:09  10   Honor.

10:16:09  11       THE COURT:  All right.  But had they put in

10:16:11  12   there that, "Look, this document reflects an opinion, a

10:16:15  13   recommendation from the sender to the recipient," then

10:16:19  14   your position would be a little different?

10:16:21  15       MR. KROBLIN:  Well, if it's simply an opinion,

10:16:23  16   in and of itself, that wasn't given as part of the

10:16:26  17   deliberative process, if it's just an opinion about a

10:16:29  18   fact, for instance, then I don't think that would be

10:16:31  19   necessarily -- that's not part of the deliberative

10:16:34  20   process.  It's simply an opinion that's relied -- and it

10:16:37  21   might not even be an opinion generated internally.  It

10:16:40  22   could be an external opinion.

10:16:41  23       But to say that this was --

10:16:42  24       THE COURT:  Right.  You're saying if it's an

10:16:44  25   opinion that goes outside of the agency, it's not

10:16:47  1    something that's protected.  It's interagency or

10:16:51  2    intra-agency discussions.

10:16:53  3         MR. KROBLIN:  Yes.  If it's intra-agency and

10:16:55  4    it's a discussion, that's one thing.  If it's simply an

10:16:57  5    opinion on a particular factual issue, I don't believe

10:17:01  6    that that's a discussion.

10:17:02  7         And again, it has to be --

10:17:03  8         THE COURT:  Well, why wouldn't that be included

10:17:06  9    within the deliberative privilege?

10:17:08  10    It seems to me if someone renders an opinion, it's

10:17:11  11   for a purpose, if it's internal.  That is, you're not

10:17:14  12   just executing or issuing opinions and just stacking

10:17:17  13   them.  They're to be shared generally.

10:17:19  14    It seems to me if it's shared with someone outside,

10:17:22  15   then it defeats the purpose of it being regarded as a

10:17:25  16   privilege.  But if it's shared inside, then it's in the

10:17:28  17   nature of an opinion, a recommendation of sorts --

10:17:30  18         MR. KROBLIN:  Your Honor, we submit that the

10:17:31  19   rule is not that all opinions are therefore governed by

10:17:34  20   the exemption.

10:17:37  21    We -- according to the exemption, the opinion -- or

10:17:40  22   it's not just an opinion, but it has to be part of the

10:17:43  23   deliberative process.  And it also has to be done prior

10:17:47  24   to the formation of some sort of policy.

10:17:50  25    So it doesn't apply if no policy was formed, for

10:17:53  1    instance, and it doesn't apply if it's an opinion about

10:17:56  2    something that wasn't related to the formation of a

10:17:59  3    particular policy.

10:17:59  4         It might be an opinion about a particular fact that

10:18:02  5    then maybe was used later or read later with regard to a

10:18:07  6    discussion on forming policy; but that opinion, in and

10:18:10  7    of itself, would not be governed by the exemption.

10:18:16  8              THE COURT:  All right.

10:18:20  9              MR. KROBLIN:  And, Your Honor, if I could just,

10:18:23  10   one more example of this, since it is a large number of

10:18:26  11   documents.

10:18:27  12        In exemption 30, for instance, here there's a, this

10:18:32  13   right here is on March 13, 2007, memo from Mr. Musher,

10:18:37  14   Mr. DiFronzo, some other individuals, regarding a

10:18:40  15   proposed notice on the Statute of Limitations, and

10:18:43  16   exchange of information between the U.S. and USVI,

10:18:46  17   withheld under the deliberative process privilege.

10:18:49  18        Well, it's a March 13th, memo.  The notice was

10:18:52  19   issued on March 12th, 2007.  So it's after.  It's

10:18:59  20   post-deliberative, if they are indeed claiming that it

10:19:01  21   is deliberative, as to the 2007-19 notice.

10:19:06  22        We don't know what else it's deliberative towards.

10:19:08  23   I don't think they can simply say it's just --

10:19:10  24   everything that is a discussion is therefore

10:19:12  25   deliberative and therefore exempt.

10:19:14  1          The FOIA Statute is in favor of full disclosure.

10:19:18  2   And so, Your Honor, I think that would be too broad of a

10:19:21  3   reading, and so we've objected to that.

10:19:25  4          And the fact that the memo itself is a factual --

10:19:30  5   it sounds to be a factual memo.  It's just regarding a

10:19:35  6   proposed notice on the Statute of Limitations and the

10:19:38  7   exchange of information between the U.S.

10:19:39  8          If it's simply a factual memo, that memo is not

10:19:42  9   part of a deliberative process.  It's just telling --

10:19:51  10  it's a statement.

10:19:52  11         Let me move on, Your Honor.

10:19:57  12         THE COURT:  So you're saying if the memo is

10:19:59  13  something in the nature of just collecting information

10:20:01  14  or compiling information, that's not deliberative.

10:20:05  15         On the other hand, if that information is in some

10:20:08  16  sort of analysis, and that analysis is shared, that's a

10:20:12  17  different story.  But you're saying all you have at this

10:20:14  18  point is information that indicates it is a document

10:20:18  19  that collects or compiles facts.

10:20:23  20         MR. KROBLIN:  Yes, Your Honor.  There's nothing

10:20:24  21  that says there was expressed opinions regarding the

10:20:29  22  implementation of X, Y, and Z, or whatever.  It just

10:20:33  23  says it's a memo re:  Statute of Limitations, to me.

10:20:33  24         THE COURT:  All right.

10:20:36  25         MR. KROBLIN:  That would be a rather broad

| | | |
|---|---|---|
| 10:20:40 | 1 | reading, should all memos regarding the Statute of |
| 10:20:41 | 2 | Limitations be considered deliberative process. |
| 10:20:46 | 3 | And definitely extra-agency documents -- we did |
| 10:20:49 | 4 | discuss this already -- if they were shared outside of |
| 10:20:51 | 5 | the agency, we don't -- we think that destroys the |
| 10:20:54 | 6 | deliberative process privilege, and we've asserted some |
| 10:20:57 | 7 | objections with regard to that.  They are listed in our |
| 10:21:00 | 8 | brief.  But -- |
| 10:21:00 | 9 | THE COURT:  But the exception covers |
| 10:21:05 | 10 | inter-agency or intra-agency, correct? |
| 10:21:05 | 11 | MR. KROBLIN:  Yes. |
| 10:21:06 | 12 | THE COURT:  You're not saying if it goes to |
| 10:21:08 | 13 | another agency, that somehow it's out of the privilege, |
| 10:21:10 | 14 | is it? |
| 10:21:11 | 15 | MR. KROBLIN:  No, I -- |
| 10:21:11 | 16 | THE COURT:  Oh, you're saying outside of the |
| 10:21:13 | 17 | government. |
| 10:21:13 | 18 | MR. KROBLIN:  Outside of the government to -- |
| 10:21:14 | 19 | THE COURT:  Right. |
| 10:21:15 | 20 | MR. KROBLIN:  -- for instance, a number of |
| 10:21:15 | 21 | these communications are between the Government of the |
| 10:21:20 | 22 | Virgin Islands and the IRS. |
| 10:21:21 | 23 | The Government of the Virgin Islands certainly |
| 10:21:23 | 24 | cannot be considered intra- or inter-agency.  And so |
| 10:21:28 | 25 | therefore it's destroyed. |

10:21:30  1          And we've listed the number of objections we have

10:21:33  2    there.  It's in our brief, objections 22, 25 through 26,

10:21:38  3    40, 44.  Some of those contain communications with the

10:21:41  4    Government of the Virgin Islands or the IRB.  And we

10:21:43  5    think that those should be disclosed, Your Honor.

10:21:46  6          The --

10:21:48  7          THE COURT:  All right.  Well, just -- give me

10:21:49  8    category, because you're going to get a chance.  I want

10:21:52  9    to just get an idea of what it is that was missing, and

10:21:54  10   then I'll have the government tell me why things are

10:21:56  11   missing.  So -- I think have an idea.

10:21:59  12         Anything else you want to briefly just cover?

10:22:02  13         MR. KROBLIN:  Yes.  Yes, Your Honor.  If I

10:22:02  14   could just talk about the second section of exemption 5,

10:22:05  15   it's attorney-client privilege documents.

10:22:09  16         You know, the, one of the major objections we have

10:22:12  17   here is we have these e-mails, some of them with 30

10:22:15  18   participants on it, being sent around and claiming

10:22:19  19   attorney-client privilege.

10:22:20  20         You know, the law as we cited in our brief,

10:22:21  21   clearly, communication that fails to preserve the

10:22:23  22   confidential nature is not privileged.

10:22:26  23         I won't --

10:22:26  24         THE COURT:  I don't need your argument now.

10:22:29  25   I'm familiar with the privilege.

10:22:30  1          Anything else?

10:22:32  2              MR. KROBLIN:  Well, Your Honor, and we also

10:22:34  3      have raised an objection regarding the National Taxpayer

10:22:39  4      Advocacy's Office.  They are -- they claim in their

10:22:41  5      opposition that -- they claim that those are, the

10:22:45  6      attorneys in the National Taxpayer Office, they claim,

10:22:47  7      are -- this is -- in their brief, document number 25, on

10:22:56  8      page 8, they state that the IRS and NTA are not separate

10:23:03  9      offices with separate attorneys.  The NTA's attorneys

10:23:06  10     are chief counsel attorneys assigned to the office.  And

10:23:08  11     so they therefore claim that they're all attorneys in

10:23:10  12     the same office, and it's not outside of the privilege.

10:23:14  13         Well, if you then look at the response to number

10:23:17  14     56, Your Honor, which is in our brief, they state the

10:23:22  15     exact opposite.  They claim that this e-mail among NTA

10:23:28  16     attorneys and IRS attorneys -- their -- we've objected

10:23:31  17     to the response, is, "The NTA has their own attorney

10:23:38  18     staff.  These attorneys are not employees of the office

10:23:41  19     of chief counsel, but of the NTA."

10:23:44  20         Clearly, the government has taken two sides of the

10:23:47  21     coin.  They assert the argument one way when it's their

10:23:52  22     convenience, and the next when it's their convenience

10:23:54  23     that way.  And so we object to that.

10:23:56  24         And just to touch on what the last objections are,

10:24:00  25     Your Honor.

10:24:01  1        We have FOIA exemption 7, for law enforcement

10:24:05  2    purposes.  A compilation must be for law enforcement

10:24:08  3    purposes, and they must demonstrate a reasonable

10:24:11  4    expectation of an interference of enforcement

10:24:14  5    proceedings.

10:24:14  6        They said disclosure could reasonably interfere,

10:24:17  7    and they just make this blanket statement with no

10:24:19  8    particularization with regard to the documents we seek.

10:24:22  9    And we don't believe "could reasonably interfere" equals

10:24:26  10   a reasonable expectation of interference.

10:24:29  11       And lastly, techniques and procedures for law

10:24:33  12   enforcement investigations, we also believe, has not

10:24:37  13   been particularized.

10:24:38  14           THE COURT:  All right.  Thank you, Attorney

10:24:40  15   Kroblin.

10:24:40  16               ARGUMENT BY THE DEFENDANT

10:24:41  17           THE COURT:  Attorney Role?  It sounds like

10:24:46  18   Attorney Kroblin agrees with most of what you say.  It

10:24:51  19   just sounds like there's an interpretational problem

10:24:54  20   here, or gap.  The plaintiff doesn't want convention

10:25:02  21   information.  And so I think what they're saying is that

10:25:09  22   your raising the exemption is misplaced for the

10:25:13  23   documents that they seek.

10:25:14  24       What's your response to that?

10:25:16  25           MR. ROLE:  Just in terms of the exemption --

10:25:20  1    I'm sorry, the convention information, Your Honor?

10:25:22  2              THE COURT:  Yeah.

10:25:24  3              MR. ROLE:  Or in general?

10:25:24  4              THE COURT:  Just starting with that.

10:25:28  5              MR. ROLE:  The definition of 6105, of

10:25:35  6    convention information covered by the statute --

10:25:43  7              THE COURT:  Well, tell me what it is that you,

10:25:44  8    that you don't want the plaintiff to have.  Just, let's

10:25:48  9    see if we can cut to the chase.

10:25:50  10             MR. ROLE:  The reason we do not want --

10:25:52  11             THE COURT:  Tell me what it is you don't want

10:25:53  12   to disclose to them.

10:25:54  13             MR. ROLE:  It is basically information --

10:25:56  14             THE COURT:  Not categorically.  Give me some

10:25:58  15   examples.

10:26:11  16        Have the parties tried to work this out before

10:26:14  17   today?

10:26:14  18             MR. ROLE:  We have, your Honor.  And that

10:26:15  19   was --

10:26:16  20             THE COURT:  Because it seems to me this, a lot

10:26:17  21   of fruit could be borne by a discussion on, "here's what

10:26:21  22   I don't want you to have," and then the plaintiffs can

10:26:24  23   say, "well, we don't want that," or "we do want that,

10:26:27  24   and here's why we think it doesn't fall within an

10:26:30  25   exemption."

| | | |
|---|---|---|
| 10:26:31 | 1 | Has that discussion taken place? |
| 10:26:33 | 2 | MR. ROLE:  We had tried to -- that was part of |
| 10:26:34 | 3 | the -- |
| 10:26:34 | 4 | THE COURT:  Well, before -- I'm going to give |
| 10:26:36 | 5 | you plenty of time to explain, but give me a yes or no, |
| 10:26:38 | 6 | so the record is clear. |
| 10:26:39 | 7 | Has it taken place?  Yes or no. |
| 10:26:43 | 8 | MR. ROLE:  I believe it has. |
| 10:26:44 | 9 | THE COURT:  Okay.  That's not a yes or no, but |
| 10:26:47 | 10 | I think I understand your position. |
| 10:26:47 | 11 | MR. ROLE:  Well -- |
| 10:26:49 | 12 | THE COURT:  I think I'm going to -- go ahead. |
| 10:26:51 | 13 | Why don't you tell me about the third-party information, |
| 10:26:55 | 14 | because it sounds like the plaintiff doesn't want |
| 10:26:58 | 15 | someone else's tax returns. |
| 10:27:00 | 16 | So, you know, you raise the exemption.  It doesn't |
| 10:27:04 | 17 | even sound like they're interested in it.  So what is it |
| 10:27:06 | 18 | that you think is relevant to that exemption that you |
| 10:27:11 | 19 | say you don't want them to have? |
| 10:27:12 | 20 | I mean, I don't think they want -- we -- I think |
| 10:27:15 | 21 | that both parties agree you don't get third-party |
| 10:27:18 | 22 | information. |
| 10:27:19 | 23 | So what is it that you think you have that requires |
| 10:27:22 | 24 | raising the exemption, that you don't want them to have? |
| 10:27:26 | 25 | MR. ROLE:  Well, it is third-party return |

| | | |
|---|---|---|
| 10:27:29 | 1 | information. |
| 10:27:29 | 2 | THE COURT:  Okay.  They don't want it. |
| 10:27:30 | 3 | MR. ROLE:  Right.  But the fact is, when we, |
| 10:27:33 | 4 | you know, when an agency processes documents, responsive |
| 10:27:38 | 5 | documents, and -- |
| 10:27:40 | 6 | THE COURT:  So you're raising it with an |
| 10:27:41 | 7 | abundance of caution, in the event they sought it, or |
| 10:27:43 | 8 | it's just something to make sure that you cover your |
| 10:27:47 | 9 | bases. |
| 10:27:48 | 10 | MR. ROLE:  Well, and some documents and the |
| 10:27:50 | 11 | third-party information is contained in other documents. |
| 10:27:52 | 12 | So it's not the entire document which is being withheld, |
| 10:27:55 | 13 | necessarily because, of (b)(3) and 6103 Internal Revenue |
| 10:28:01 | 14 | Code.  It's just a portion of that. |
| 10:28:02 | 15 | THE COURT:  Right. |
| 10:28:03 | 16 | MR. ROLE:  So my, the only thing that I recall |
| 10:28:07 | 17 | from plaintiff's papers on that is they seem to be |
| 10:28:14 | 18 | saying that, something for 6103, but asserting work |
| 10:28:19 | 19 | product. |
| 10:28:19 | 20 | And I went back and looked at the document, I don't |
| 10:28:22 | 21 | see that.  And I cover that in the reply brief, as well. |
| 10:28:27 | 22 | We wouldn't be asserting (b)(3) for attorney work |
| 10:28:31 | 23 | product. |
| 10:28:32 | 24 | THE COURT:  All right.  Well, I'm just dealing |
| 10:28:34 | 25 | with the third-party information now.  I think work |

10:28:36  1    product and attorney-client sort of have a life of their

10:28:39  2    own.

10:28:39  3         But just dealing with the specific exemptions that

10:28:42  4    the statute recognizes and enumerates, I'm just trying

10:28:46  5    to go down that list.

10:28:47  6         And so the third-party information, notwithstanding

10:28:49  7    work product, are there things, to your knowledge,

10:28:56  8    outside of the category of third-party taxpayer

10:29:01  9    information that you have in your custody or control

10:29:05  10   that you don't want the plaintiff to get?

10:29:10  11        That would fall -- that would apply to this

10:29:14  12   exemption, exemption number 3.

10:29:16  13             MR. ROLE:  I'm sorry --

10:29:18  14             THE COURT:  That is, you raise an exemption,

10:29:20  15   you say certain things cannot be disclosed because it

10:29:22  16   involves third-party information, correct?

10:29:24  17             MR. ROLE:  Right.  And that's Section 6103 of

10:29:26  18   the Internal Revenue Code.

10:29:27  19             THE COURT:  Right.  Yes.

10:29:28  20        Now they say they don't want any of that.  Is there

10:29:31  21   some gray area here that we're missing, or --

10:29:34  22             MR. ROLE:  Not that I'm aware of, Your Honor.

10:29:36  23             THE COURT:  Okay.  Have you had a discussion on

10:29:37  24   that, to make sure that there isn't some gray area that

10:29:41  25   might be disclosable, that you think is not disclosable?

| | |
|---|---|
| 10:29:48 | 1 |
| 10:29:50 | 2 |
| 10:29:52 | 3 |
| 10:29:53 | 4 |
| 10:29:59 | 5 |
| 10:30:01 | 6 |
| 10:30:04 | 7 |
| 10:30:04 | 8 |
| 10:30:07 | 9 |
| 10:30:11 | 10 |
| 10:30:15 | 11 |
| 10:30:19 | 12 |
| 10:30:21 | 13 |
| 10:30:23 | 14 |
| 10:30:25 | 15 |
| 10:30:29 | 16 |
| 10:30:32 | 17 |
| 10:30:37 | 18 |
| 10:30:42 | 19 |
| 10:30:46 | 20 |
| 10:30:52 | 21 |
| 10:30:55 | 22 |
| 10:30:58 | 23 |
| 10:31:01 | 24 |
| 10:31:04 | 25 |

MR. ROLE:  Not beyond the objections which were exchanged back and forth.

THE COURT:  All right.

Go on to the next exemption.  Let's talk about 6105.

MR. ROLE:  And again, Your Honor, the definition of --

THE COURT:  Actually, before we go on to 6105, the third-party information that you say is not disclosable, give me your view of what that includes, just so we're -- I just want to make sure it's not overbroad.

MR. ROLE:  Of 6103?

THE COURT:  Yeah.  The specific material that you have said is not disclosable.  I don't want a discussion on 6103.  I want to know, of the material that you have gathered, give me an idea of what it is that you feel is covered by the, that exemption.

MR. ROLE:  Basically, the documents for which it's being asserted are documents where there are examinations which are underway, which involve the Statute of Limitations issue, but they involve a -- they're not a general discussion of the Statute of Limitations issue, or the subject matter is covered by the two IRS notices, but rather pertaining to a

| | | |
|---|---|---|
| 10:31:07 | 1 | particular taxpayer and a particular examination. |
| 10:31:10 | 2 | THE COURT:  All right.  And that's the universe |
| 10:31:12 | 3 | of your documents to which that exemption applies? |
| 10:31:14 | 4 | MR. ROLE:  That's correct, Your Honor. |
| 10:31:15 | 5 | THE COURT:  All right.  So a specific taxpayer |
| 10:31:19 | 6 | and there's some examination that's underway, and you |
| 10:31:22 | 7 | don't want to disclose those and you assert the |
| 10:31:25 | 8 | exemption number 3. |
| 10:31:27 | 9 | MR. ROLE:  That's correct, Your Honor. |
| 10:31:28 | 10 | THE COURT:  All right.  And that is the |
| 10:31:31 | 11 | universe of documents, correct? |
| 10:31:33 | 12 | MR. ROLE:  That is correct, Your Honor.  There |
| 10:31:37 | 13 | are some -- those are the areas where it's being |
| 10:31:39 | 14 | withheld in full. |
| 10:31:40 | 15 | THE COURT:  Right. |
| 10:31:41 | 16 | MR. ROLE:  And then there are some where just |
| 10:31:44 | 17 | portions of -- |
| 10:31:46 | 18 | THE COURT:  Give me an example of some of |
| 10:31:49 | 19 | those, just so we're clear that your interpretation is |
| 10:31:51 | 20 | not overbroad.  I don't think that the plaintiff |
| 10:31:56 | 21 | disputes the first portion. |
| 10:31:57 | 22 | You don't dispute that, do you, Attorney Kroblin, |
| 10:31:59 | 23 | that there's a problem with that? |
| 10:32:01 | 24 | MR. KROBLIN:  No, Your Honor. |
| 10:32:01 | 25 | THE COURT:  All right. |

| | | |
|---|---|---|
| 10:32:02 | 1 | Let's go to the second part, then, the things that |
| 10:32:05 | 2 | are in part. |
| 10:32:08 | 3 | MR. ROLE:  There are, for example, letters |
| 10:32:10 | 4 | from -- I know in one case there's a taxpayer's counsel |
| 10:32:17 | 5 | has written a letter, again on the basic, basic subject |
| 10:32:22 | 6 | areas, but it's done in the context of a particular -- |
| 10:32:26 | 7 | their client, a particular taxpayer.  So the Service has |
| 10:32:31 | 8 | withheld information pertaining just to that particular |
| 10:32:35 | 9 | taxpayer. |
| 10:32:35 | 10 | THE COURT:  All right.  You said that was an |
| 10:32:37 | 11 | example of an in-part disclosure.  What part was |
| 10:32:40 | 12 | disclosed, or you feel is disclosable? |
| 10:32:43 | 13 | MR. ROLE:  It would be the rest of the letter. |
| 10:32:44 | 14 | And just the specific return information, as that's |
| 10:32:47 | 15 | defined in the statute, will be taken out of the letter. |
| 10:32:49 | 16 | THE COURT:  All right.  Okay. |
| 10:32:51 | 17 | Now, is that the universe of documents to which you |
| 10:32:55 | 18 | have asserted the exemption number 3? |
| 10:32:59 | 19 | MR. ROLE:  That's correct, Your Honor. |
| 10:33:00 | 20 | THE COURT:  All right.  Let's move on to the |
| 10:33:02 | 21 | next part, 6105. |
| 10:33:09 | 22 | MR. ROLE:  And much of this is draft |
| 10:33:19 | 23 | information and information exchanged between the |
| 10:33:22 | 24 | competent authority and the BIR, both in terms of a |
| 10:33:34 | 25 | draft of the working agreement between the Service and |

10:33:38  1    the BIR, in terms of how information is going to be

10:33:45  2    exchanged.

10:33:46  3         THE COURT:  Now, I think Attorney Kroblin is

10:33:48  4    saying that the BIR is not -- or that exchange between

10:33:54  5    the BIR and the Service is not the type of exchange that

10:34:00  6    is contemplated by 6105.

10:34:04  7       Is that right, Attorney Kroblin?

10:34:09  8         MR. KROBLIN:  Your Honor, if we're talking

10:34:10  9    about the 6501 treaty exemption --

10:34:13  10        THE COURT:  6105.

10:34:15  11        MR. KROBLIN:  6105, excuse me -- the treaty

10:34:17  12   exemption then, Your Honor, I believe in that context it

10:34:20  13   could be covered if, if the treaty itself defines that

10:34:24  14   material as confidential or treats that material as

10:34:26  15   confidential.

10:34:27  16        THE COURT:  All right.

10:34:28  17      Go ahead, Attorney Role.

10:34:31  18        MR. ROLE:  There was -- there's also provision

10:34:33  19   in Section 6105 where the information cannot be

10:34:37  20   disclosed if the competent authority determines it would

10:34:41  21   impair tax administration if it were disclosed.

10:34:44  22      And here the competent authority is Mr. O'Donnell,

10:34:48  23   who has made that determination.  And simply, he

10:34:56  24   explains -- and this is not uncommon between taxing

10:34:59  25   authorities -- that there's an expectation of trust that

10:35:02  1    information will not be disclosed, that it will just be

10:35:04  2    retained within the two agencies exchanging the

10:35:08  3    information.

10:35:09  4        That's all set forth in detail in Mr. O'Donnell's

10:35:13  5    declaration in paragraphs 12 through 17.  And again, the

10:35:27  6    territory -- the United States competent authority and

10:35:29  7    the territories, Virgin Islands, Puerto Rico, Guam, all

10:35:36  8    have similar agreements, where this confidentiality is

10:35:39  9    expected, and that information exchanged will not be

10:35:43  10   disclosed.

10:35:45  11       So we would submit that this information is covered

10:35:50  12   under the treaty information and under Pacific

10:35:55  13   Fisheries.  But even if it were not, the separate

10:35:57  14   provision of Section 6105, which provides for a finding

10:36:01  15   that its disclosure would impair tax administration,

10:36:05  16   would also render it not disclosable --

10:36:07  17            THE COURT:  Now, how would it impair tax

10:36:11  18   information?

10:36:16  19       That is, you agree you can't just throw it out

10:36:19  20   there, otherwise you could throw it out all the time.

10:36:22  21            MR. ROLE:  That's correct.

10:36:22  22            THE COURT:  So tell me how.

10:36:27  23            MR. ROLE:  The taxing authorities want to be

10:36:30  24   free to pursue their own examinations and

10:36:35  25   investigations, be they civil or criminal, without

10:36:39   1    interference, without fear that the subject of that

10:36:46   2    investigation or examination will find out about it.

10:36:49   3         So there's an expectation of confidentiality, if

10:36:53   4    treaty partners are exchanging -- or the convention

10:36:56   5    partners are exchanging information regarding a

10:36:59   6    particular taxpayer.

10:37:00   7              THE COURT:  Right.  But I think that would fall

10:37:02   8    under 6103.  I don't think they're interested in that.

10:37:05   9    So I think just -- we're not talking about specific

10:37:08  10    taxpayer.  I think this is more a higher level sort of

10:37:11  11    discussion that I think the plaintiff is interested in.

10:37:13  12    It's not something that implicates a taxpayer.

10:37:16  13         I think what they want is more, probably a policy

10:37:19  14    discussion or some sort of discussion that deals with

10:37:23  15    setting up a framework for this new approach or for the,

10:37:28  16    that has to deal with the limitations issue.  So they're

10:37:32  17    not asking for specifics.  They're just asking for the

10:37:35  18    general, as I understand it.

10:37:38  19              MR. ROLE:  Well, I think that the simplest

10:37:39  20    response to that, Your Honor, is the IRS doesn't want

10:37:44  21    the BIR determining what's relevant to its examinations

10:37:49  22    and what's not, and what can be disclosed and what

10:37:53  23    cannot be; and similarly, that the BIR doesn't want the

10:37:56  24    IRS to make the determination as to whether something

10:38:01  25    should be kept confidential or not.

| | | |
|---|---|---|
| 10:38:03 | 1 | THE COURT:  Right.  But how does it impair? |
| 10:38:09 | 2 | Because it's impairment that you're concerned about. |
| 10:38:13 | 3 | I can understand, and I think everyone appreciates, |
| 10:38:17 | 4 | if you say taxpayer information is somehow disclosed |
| 10:38:20 | 5 | through this exchange.  But we're not talking about |
| 10:38:23 | 6 | that.  That's a 6103 discussion.  We've had that one. |
| 10:38:27 | 7 | We're just talking about the general discussion |
| 10:38:29 | 8 | between the BIR and the Service.  And you say that this, |
| 10:38:35 | 9 | I guess the catch-all has sort of been triggered because |
| 10:38:40 | 10 | it would cause some impairment. |
| 10:38:41 | 11 | And I'm asking you how is it, specifically, that it |
| 10:38:45 | 12 | would cause some impairment for the type of information |
| 10:38:48 | 13 | that I believe the plaintiff seeks, not |
| 10:38:53 | 14 | taxpayer-specific information, just some general |
| 10:38:55 | 15 | exchange between the BIR and the Service? |
| 10:39:05 | 16 | For example, let's say there was some exchange |
| 10:39:08 | 17 | between the Service that said, you know, "We think" -- |
| 10:39:12 | 18 | "Here's our view on the limitations issue." |
| 10:39:15 | 19 | And the BIR says, "Hmm, that's a nice philosophical |
| 10:39:23 | 20 | approach.  Here's what we think." |
| 10:39:24 | 21 | Let's suppose they're interested in that.  How does |
| 10:39:27 | 22 | that exchange, the disclosure of that exchange cause |
| 10:39:30 | 23 | some sort of impairment? |
| 10:39:33 | 24 | You agree they're not talking about specific |
| 10:39:35 | 25 | taxpayers there, correct? |

| 10:39:37 | 1 | MR. ROLE:  I do, Your Honor. |

10:39:37  1          MR. ROLE:  I do, Your Honor.

10:39:38  2          THE COURT:  All right.  Let's use that as a

10:39:40  3  hypo.  Tell me how that causes some impairment.

10:39:43  4          MR. ROLE:  It is somewhat analogous to the

10:39:45  5  deliberative process privilege.  And because the BIR

10:39:50  6  maybe --

10:39:50  7          THE COURT:  Well, wait a minute.  Who does the

10:39:52  8  deliberative process apply to?

10:39:54  9          MR. ROLE:  No, I'm not -- I'm saying it's

10:39:56  10  analogous to it; it is not the deliberative process.

10:39:59  11          THE COURT:  All right.

10:39:59  12          MR. ROLE:  What I'm saying, it's analogous to,

10:40:02  13  in the sense of, you know, the two entities discussing,

10:40:08  14  you know, a policy agreement.

10:40:09  15          THE COURT:  Right.  But you, yourself, said

10:40:13  16  that the BIR can't tell the IRS and the IRS can't tell

10:40:17  17  the BIR, you know, "This is how you conduct yourself or

10:40:21  18  manage your business."

10:40:22  19      So it's not like they're -- I can appreciate what

10:40:25  20  you're saying with the analogy to the deliberative

10:40:29  21  process, but's more like separate entities talking

10:40:34  22  shop --

10:40:35  23          MR. ROLE:  Right.  If --

10:40:36  24          THE COURT:  -- but not in a binding, binding

10:40:38  25  way, or in a way that sort of gets into the deliberative

10:40:44  1    process.

10:40:45  2              MR. ROLE:  But it could be in the sense of say

10:40:47  3    the IRS proposes something and the BIR says, "Well,

10:40:52  4    okay, but that would have -- if you did that, that would

10:40:54  5    have this kind of effect on us, and we, we would prefer

10:41:02  6    you not do that for these particular reasons."

10:41:05  7         It may be interference with a particular -- or, you

10:41:13  8    know, might interfere with a particular type of program

10:41:16  9    that BIR is doing, in terms of compliance.  That they --

10:41:21  10             THE COURT:  But wouldn't you be required to

10:41:23  11   show me something more, though?

10:41:25  12        That is, you would have to show me that that is

10:41:28  13   likely?

10:41:32  14             MR. ROLE:  Not if it's a finding by the

10:41:34  15   competent authority that it would impair tax

10:41:36  16   administration.

10:41:37  17             THE COURT:  Right.  But that's where we started

10:41:38  18   out.

10:41:39  19             MR. ROLE:  I understand --

10:41:40  20             THE COURT:  I'm trying to figure out how it

10:41:42  21   impairs, how it causes this impairment that you discuss,

10:41:46  22   so I -- I mean, what it sounds like is, we don't want to

10:41:49  23   embarrass, we don't want show, sort of, our discussion.

10:41:52  24        But I don't know how it -- not even embarrass,

10:41:55  25   that's probably the wrong word.  "We don't want to

| | | |
|---|---|---|
| 10:41:58 | 1 | disclose it," is what it sounds like to me.  But it |
| 10:42:00 | 2 | doesn't really get to the nub of the question, which is: |
| 10:42:03 | 3 | How does it cause the impairment about which you are |
| 10:42:07 | 4 | concerned? |
| 10:42:08 | 5 | MR. ROLE:  I have very limited experience in |
| 10:42:12 | 6 | international tax law, and what I have has been picked |
| 10:42:14 | 7 | up through either FOIA litigation or wrongful disclosure |
| 10:42:20 | 8 | litigation.  So by no means, it's comprehensive -- |
| 10:42:23 | 9 | THE COURT:  But then here is the other thing -- |
| 10:42:25 | 10 | MR. ROLE:  But you're -- but my |
| 10:42:25 | 11 | understanding -- |
| 10:42:26 | 12 | THE COURT:  Hold on one second, Attorney Role. |
| 10:42:28 | 13 | Here is the other thing, though.  You mention |
| 10:42:30 | 14 | international.  You agree that the Virgin Islands is a |
| 10:42:32 | 15 | U.S. territory.  So it's not quite like a convention |
| 10:42:38 | 16 | between, let's say, I don't know, Mexico and the United |
| 10:42:45 | 17 | States or Canada and the United States. |
| 10:42:46 | 18 | This is, you know, it's a state taxing authority |
| 10:42:49 | 19 | having a relationship with the Service; not quite a |
| 10:42:53 | 20 | treaty, not quite international.  So it's a little bit |
| 10:43:00 | 21 | different, wouldn't you agree? |
| 10:43:06 | 22 | MR. ROLE:  Yes, yes and no.  It's the, you |
| 10:43:10 | 23 | know, unusual status that commonwealths and territories |
| 10:43:13 | 24 | of the United States have with the United States.  But |
| 10:43:19 | 25 | there still are tax conventions.  And there are tax |

10:43:22  1    conventions between the IRS and the State of Montana.

10:43:27  2        So there is this other diplomatic veneer to this

10:43:37  3    that doesn't exist between the IRS and a particular

10:43:39  4    state.  These conventions do exist, and these are tax

10:43:43  5    treaties, even though the Virgin Islands is a part of

10:43:45  6    the United States.

10:43:48  7        And every tax treaty that I'm aware of, and

10:43:53  8    convention, does have the secrecy provision.

10:44:01  9             THE COURT:  Like what?

10:44:02  10       When you say "treaty," you said every treaty of

10:44:07  11   which you're aware of.

10:44:08  12            MR. ROLE:  Every tax treaty of which I'm aware

10:44:10  13   of between the United States and another country or a

10:44:14  14   territory has the secrecy provision, and there's an

10:44:16  15   understanding that information exchanged will not be

10:44:21  16   disclosed.

10:44:26  17            THE COURT:  All right.  So you're saying that

10:44:27  18   the information -- using my example again, you're saying

10:44:33  19   that that information was exchanged pursuant to a tax

10:44:36  20   convention?

10:44:39  21            MR. ROLE:  Information exchanged pursuant,

10:44:43  22   or --

10:44:44  23            THE COURT:  I'm not asking you generally.  I'm

10:44:46  24   asking you with respect to things of the nature that I

10:44:49  25   just told you.  The IRS says, "Here's our view on the

10:44:54  1    limitation issue."

10:44:55  2        The IRB says, "Here's our view," or they have some

10:44:59  3    comment on it.

10:45:00  4        That exchange, you're saying that that exchange is

10:45:02  5    pursuant to a tax convention?

10:45:09  6            MR. ROLE:  It depends on whether, whether that

10:45:12  7    information -- it could be --

10:45:13  8            THE COURT:  It would have to be specific.  You

10:45:15  9    would agree that if it -- to be covered under that, that

10:45:19  10   provision, it would have to be something that, say, the

10:45:21  11   convention itself speaks to, that is, the convention

10:45:24  12   would say any discussions on -- or this -- the Service

10:45:28  13   shall share, blah, blah, blah, with the IRB.

10:45:32  14       And if it isn't included in that definition of what

10:45:36  15   is shared pursuant to the tax convention, then it's not

10:45:39  16   something that's contemplated by the tax convention.

10:45:42  17       Would you agree with that?

10:45:46  18           MR. ROLE:  Well, I mean, any agreement pursuant

10:45:49  19   to a tax convention would be covered as well.  And any

10:45:55  20   kind of discussion of that agreement, any kind of

10:45:59  21   background to that agreement, anything implementing the

10:46:02  22   agreement, would all be covered under that.

10:46:10  23           THE COURT:  All right.  Go ahead.

10:46:13  24           MR. ROLE:  Is there a -- do you want me to

10:46:16  25   pursue 6105 any further or --

10:46:17 1          THE COURT:  Yeah.  I don't -- I'm not really

10:46:22 2    quite sure that I'm getting an answer to my question.

10:46:27 3          At one point I thought you were saying that the

10:46:29 4    competent authority said that this would cause some

10:46:32 5    impairment, and I think we sort of drifted into the

10:46:36 6    definition of "tax convention information," which would

10:46:40 7    be things that would be shared pursuant to the tax

10:46:44 8    convention.

10:46:45 9          But I'm not quite sure that there is a provision in

10:46:49 10   the tax convention that says, "This type of information

10:46:53 11   is shared pursuant to the tax convention," or is there?

10:47:00 12         MR. ROLE:  Again -- and I apologize, Your

10:47:02 13   Honor, I'm not, I'm not following your question.

10:47:03 14         THE COURT:  All right.  The information of the

10:47:05 15   nature that I just spoke of, that is, the IRS says,

10:47:10 16   "Here is our position on the limitations issue."

10:47:12 17         The IRB may or may not have responded, and they

10:47:16 18   said, you know, "Here is our position."

10:47:19 19         That information, that type of information, you

10:47:22 20   say, would cause some sort of impairment, correct?

10:47:27 21         MR. ROLE:  That, that is correct.

10:47:28 22         THE COURT:  All right.  And you say there's

10:47:29 23   been a finding, some sort of general sort of statement

10:47:33 24   that disclosure is inappropriate, because it would cause

10:47:41 25   this impairment.

10:47:41  1          I thought, as an alternative to that, you were

10:47:44  2    saying that, also, this is information shared pursuant

10:47:46  3    to the tax convention.

10:47:48  4          MR. ROLE:  Under the hypothetical, it could

10:47:51  5    be --

10:47:51  6          THE COURT:  All right.  Well, let me -- maybe,

10:47:54  7    maybe I can simplify things a little.

10:47:57  8          Is there any information of the nature about which

10:47:59  9    I just gave an example, where the IRS says, "Here's our

10:48:04 10    position on the limitation issue"?

10:48:08 11          Yes or no.

10:48:10 12          MR. ROLE:  I do not know, Your Honor.

10:48:12 13          THE COURT:  All right.  Well, how many pages

10:48:14 14    have you withheld under this category?

10:48:36 15          Because you agree, the Fisheries case, about which

10:48:38 16    you speak and rely on, dealt with Russia.

10:48:45 17          MR. ROLE:  It did, Your Honor.

10:48:45 18          THE COURT:  All right.

10:49:03 19          MR. ROLE:  There are 58 pages being withheld,

10:49:04 20    in full.  That includes drafts of the working agreement

10:49:07 21    between the United States and the Virgin Islands

10:49:08 22    concerning exchanges of information, requests for

10:49:12 23    exchanges of information, and requests made under the

10:49:14 24    convention.

10:49:14 25          THE COURT:  All right.  Have you reviewed those

10:49:16  1    58 pages?

10:49:20  2              MR. ROLE:  I personally have not, Your Honor.

10:49:22  3              THE COURT:  All right.  Well, before the day is

10:49:24  4    out I think we're going to have the parties go to the

10:49:29  5    magistrate and we're going review that, and see whether

10:49:30  6    it's of the nature about which I just spoke, which I

10:49:34  7    think is probably what the plaintiffs are interested in.

10:49:36  8    I think they want to know, was there that sort of

10:49:39  9    discussion.

10:49:40  10        I don't think that they are seeking the things that

10:49:44  11   are specifically enumerated under the definition of tax

10:49:47  12   convention information, because I think they would

10:49:53  13   concede that those things are exempt.

10:49:57  14        What they don't want is some generic, broad, vague

10:50:04  15   sort of label placed on the documents that would include

10:50:08  16   things that are not contemplated by the tax convention

10:50:16  17   exception.

10:50:17  18        So I think that we're going to have the magistrate

10:50:19  19   get involved in that to some degree, to make sure that

10:50:23  20   the labeling isn't overbroad.  And also, the finding

10:50:27  21   applies to the things that have been withheld, the 58

10:50:30  22   pages that have been withheld.

10:50:36  23        All right.  Go ahead.

10:50:42  24        Is that sort of the plaintiff's position?

10:50:44  25        You want to know what the IRS said to the IRB, and

10:50:46  1    what the IRB said back to the IRS, correct, on this

10:50:50  2    issue?

10:50:50  3            MR. KROBLIN:  Yes, Your Honor.

10:50:51  4            THE COURT:  You don't want information that

10:50:52  5    would otherwise be under one of the specific categories

10:50:59  6    of tax convention information.

10:51:02  7            MR. KROBLIN:  Yes, Your Honor.  If I may -- I'm

10:51:03  8    holding the tax convention in my hand.

10:51:05  9            THE COURT:  Yeah, you'll get another chance.

10:51:08  10   All right.

10:51:08  11       All right, Attorney Role, go ahead.  Let me hear

10:51:11  12   you on the inter-agency or intra-agency memorandum.

10:51:21  13           MR. ROLE:  There are actually two notices which

10:51:23  14   are at issue here, 2007-19 and 2007-31.  2007-31 was

10:51:30  15   issued later.  So one of the cases discussed by

10:51:34  16   plaintiff, and he was citing the date of it as being

10:51:37  17   March 13th, before the notice was issued, that was

10:51:43  18   objection 30.  Notice 2007-31 was issued March 30th.  So

10:51:50  19   that actually was before 2007-31 was issued.

10:52:01  20       And again, we believe all the documents being

10:52:05  21   withheld --

10:52:05  22           THE COURT:  How many pages are we talking

10:52:07  23   about?

10:52:25  24           MR. ROLE:  There are 1,335 in full, and 242 in

10:52:30  25   part.  But that also includes attorney-client and

| | | |
|---|---|---|
| 10:52:41 | 1 | attorney work product issues, all of which fall under |
| 10:52:46 | 2 | (b)(5).  I think the majority of them are -- |
| 10:52:59 | 3 | THE COURT:  What's the number?  I'm sorry. |
| 10:53:03 | 4 | MR. ROLE:  1,335 in full, and 242 in part. |
| 10:53:11 | 5 | THE COURT:  All right.  And what's the -- you |
| 10:53:15 | 6 | said the majority of them is what? |
| 10:53:16 | 7 | MR. ROLE:  The majority of them is deliberative |
| 10:53:18 | 8 | process.  And there also is attorney-client and attorney |
| 10:53:26 | 9 | work product. |
| 10:53:26 | 10 | And I don't have the breakdown as to which are |
| 10:53:33 | 11 | those two categories, but the vast majority is |
| 10:53:37 | 12 | deliberative process. |
| 10:53:38 | 13 | THE COURT:  All right.  Tell me what you mean |
| 10:53:39 | 14 | by "deliberative process."  Because I think when I was |
| 10:53:42 | 15 | speaking with Attorney Kroblin, he said that you haven't |
| 10:53:45 | 16 | indicated with enough specificity what deliberative, |
| 10:53:49 | 17 | what deliberation was being undertaken.  And it -- you |
| 10:53:57 | 18 | would agree that collecting facts is not deliberation, |
| 10:54:01 | 19 | correct? |
| 10:54:03 | 20 | MR. ROLE:  It can be a part of deliberation, |
| 10:54:05 | 21 | certainly, but it's not, it's not -- |
| 10:54:07 | 22 | THE COURT:  It's not -- here is what I think we |
| 10:54:10 | 23 | ought to do.  It's -- if you're just gathering |
| 10:54:12 | 24 | information generally, you know, "Let's see what the |
| 10:54:16 | 25 | limitations period is in" -- so and so, and you gather |

10:54:18  1    information, someone is doing that, you would agree that

10:54:21  2    that's not contemplated by the deliberative process.

10:54:24  3    That's just fact-gathering.

10:54:27  4            MR. ROLE:  Right; unless the opinion is so

10:54:30  5    intertwined with the facts, they cannot be separated.

10:54:36  6    But I don't believe there are many instances of that.

10:54:40  7            THE COURT:  All right.  Now, Attorney Kroblin

10:54:42  8    has said that there's a label, but there isn't enough

10:54:46  9    flesh on the bones to yield the conclusion that you've

10:54:51  10   reached, which is that this is somehow exempt.

10:54:54  11       That is, you have lots of pages, you have a nice

10:54:57  12   label on it, but there isn't enough information that

10:55:01  13   would allow the Court to make a determination that the

10:55:06  14   nondisclosure is appropriate, because other than the

10:55:11  15   label, you know, I would just be going on faith.

10:55:17  16           MR. ROLE:  I'm sorry.  Is that the Court's

10:55:18  17   position?

10:55:19  18           THE COURT:  No, no.  I think -- that's what I

10:55:21  19   understand Attorney Kroblin's position to be.  That

10:55:23  20   there isn't -- I think he said something to the effect

10:55:24  21   of:  Well, there aren't those magic words in there, that

10:55:33  22   sort of deliberative purposes.

10:55:35  23       And so, you know, to the -- no, it's not the

10:55:36  24   Court's position, no.  I'm just asking the questions.

10:55:39  25           MR. ROLE:  I would disagree with that

10:55:42  1    characterization --

10:55:43  2            THE COURT:  All right.

10:55:45  3            MR. ROLE:  -- that declaration.  I can just

10:55:47  4    pick up, you know, anything at random, a February 16th,

10:55:55  5    2007, e-mail from Mr. Lopresti to Donna Hansbury,

10:55:59  6    current director of Global High Wealth Industry, LMSB,

10:56:03  7    requesting information on status of USVI exams on behalf

10:56:08  8    of NTA, used to form the NTA's opinion on a position to

10:56:10  9    be taken in Notice 2007-19.  Withheld, under the

10:56:13  10   deliberative process privilege.

10:56:17  11       That gives the date, the type of document, who it

10:56:22  12   was between, the subject area of it.  And again, I'm not

10:56:34  13   sure our -- how much we believe that that information is

10:56:37  14   sufficient, and information provided in the declaration

10:56:40  15   is sufficient, for the Court to determine whether or not

10:56:43  16   the exemption should apply.

10:56:47  17           THE COURT:  All right.  Give me some more

10:56:50  18   examples.

10:56:57  19           MR. ROLE:  March 13, 2007, memo from

10:57:00  20   Mr. Musher, Mr. DiFronzo, Mr. Cadenas, Mr. Giblen and

10:57:05  21   Mr. Varley, to Ms. Potter and Kristin Weilobob,

10:57:09  22   assistant to the commissioner, regarding a proposed

10:57:11  23   notice on the Statute of Limitations and exchange of

10:57:14  24   information between the United States and the U.S.

10:57:17  25   Virgin Islands.

| | |
|---|---|
| 10:57:24 | 1 |
| 10:57:25 | 2 |
| 10:57:30 | 3 |
| 10:57:32 | 4 |
| 10:57:34 | 5 |
| 10:57:39 | 6 |
| 10:57:41 | 7 |
| 10:57:42 | 8 |
| 10:57:44 | 9 |
| 10:57:46 | 10 |
| 10:57:47 | 11 |
| 10:57:50 | 12 |
| 10:57:55 | 13 |
| 10:58:02 | 14 |
| 10:58:17 | 15 |
| 10:58:18 | 16 |
| 10:58:21 | 17 |
| 10:58:23 | 18 |
| 10:58:27 | 19 |
| 10:58:32 | 20 |
| 10:58:36 | 21 |
| 10:58:36 | 22 |
| 10:58:38 | 23 |
| 10:58:41 | 24 |
| 10:58:43 | 25 |

            THE COURT:  You would agree that something like
that is not, unless there's a lawyer involved, isn't
work product or isn't attorney-client?
            MR. ROLE:  Right.  And this is something that
was deliberative process, solely as being -- what I've
read as just a deliberative process privilege assertion.
            THE COURT:  All right.
            MR. ROLE:  Now, there are some documents for
which more than one exemption has been asserted.
            THE COURT:  All right.
            MR. ROLE:  So there may be, you know, there may
also be attorney-client being asserted for the same
document.  But again, I think in this case, for the most
part it's deliberative process being asserted, solely.
            THE COURT:  All right.
            MR. ROLE:  The Service had also issued or
asserted (b)(6) as an exemption.  That was just for an
e-mail address of one employee.  The plaintiff has not
challenged that.
      The other exemption is 7.  And information has
been --
            THE COURT:  Well, I don't think they're
interested in personnel and medical files, so I don't
really think there's an issue there.  It sounds like
that's more under the category of third-party

10:58:47  1    information, or one of the things that you assert.  But

10:58:49  2    I don't really think that they're interested in that.

10:58:55  3        All right.  Then you were saying exemption 7, law

10:58:58  4    enforcement purposes.

10:59:00  5              MR. ROLE:  Right.

10:59:02  6              THE COURT:  Tell me the universe of documents.

10:59:05  7    How many pages are we talking about?

10:59:06  8              MR. ROLE:  There's two subparts of exemption 7.

10:59:11  9    Under 7(a), the Service is withholding 40 pages of

10:59:16  10   documents in full and 21 in part.  And for exemption

10:59:29  11   7(e), the Service is withholding ten pages in full and

10:59:33  12   six pages in part.

10:59:54  13             THE COURT:  All right.  And you're saying it

10:59:57  14   would compromise an investigation, or that they relate

10:59:59  15   to an investigation?

11:00:06  16             MR. ROLE:  It doesn't -- for exemption 7(a),

11:00:13  17   it's being asserted for documents which either deal with

11:00:17  18   ongoing examinations, civil examinations and criminal

11:00:21  19   investigations, or procedures for conducting present and

11:00:25  20   future enforcement activity, be it civil or criminal;

11:00:31  21   7(a).

11:00:32  22             THE COURT:  All right.  So you're saying that

11:00:33  23   those documents all pertain to either an ongoing

11:00:36  24   investigation or some policy as to how you would

11:00:39  25   undertake an investigation?

| 11:00:43 | 1 | MR. ROLE:  Right, or the particular procedures |
| 11:00:44 | 2 | or techniques used on, say, selecting a return for |
| 11:00:51 | 3 | examination. |
| 11:00:51 | 4 | THE COURT:  All right.  We're talking about 50 |
| 11:00:53 | 5 | pages, right, all told, under (a) and (e)? |
| 11:00:59 | 6 | MR. ROLE:  That's correct, Your Honor. |
| 11:01:00 | 7 | THE COURT:  So if the magistrate were to take a |
| 11:01:02 | 8 | look at those documents, she would be able to at least |
| 11:01:05 | 9 | report on -- to the Court as to whether they are |
| 11:01:09 | 10 | properly under the exemptions, correct? |
| 11:01:13 | 11 | MR. ROLE:  That is correct, Your Honor. |
| 11:01:14 | 12 | THE COURT:  All right.  I think that's what I'm |
| 11:01:16 | 13 | inclined to do with these documents. |
| 11:01:18 | 14 | I think the 1,300 documents poses a little bit more |
| 11:01:22 | 15 | of a problem, but I think we're going to give it a shot. |
| 11:01:24 | 16 | But I didn't get the sense that the yes or no as to |
| 11:01:29 | 17 | whether the discussion had taken place, that there was a |
| 11:01:34 | 18 | clear answer to that. |
| 11:01:36 | 19 | But it seems to me that some of the information |
| 11:01:42 | 20 | sought here, you know, might be a good subject for some |
| 11:01:51 | 21 | discussion.  I know this is an evidentiary hearing.  I |
| 11:01:56 | 22 | know there are summary judgment motions.  But I think in |
| 11:01:58 | 23 | aid of the Court reaching a decision, it seems to me a |
| 11:02:03 | 24 | meeting with the magistrate might be helpful to that |
| 11:02:07 | 25 | end. |

11:02:07  1        Yes, Attorney Role?

11:02:08  2             MR. ROLE:  Your Honor, I do not have the

11:02:09  3    documents with me today.

11:02:16  4             THE COURT:  All right.  Are those -- those

11:02:18  5    documents can be sent electronically, can they not?

11:02:23  6             MR. ROLE:  They are not in electronic format at

11:02:26  7    the present time, so they would have to be scanned and

11:02:32  8    transmitted.

11:02:33  9             THE COURT:  All right.  So none of them are

11:02:36  10   kept in some database; is that what you're saying?

11:02:39  11            MR. ROLE:  No, Your Honor.

11:02:42  12            THE COURT:  All right.  How would the

11:02:43  13   government propose we proceed, then?

11:02:47  14            MR. ROLE:  Certainly, I mean, if the Court

11:02:49  15   wishes us to meet with the magistrate judge, we can

11:02:51  16   certainly do that.  And I can return and bring the

11:02:58  17   documents with me.  If the Court would prefer that the

11:03:02  18   magistrate judge take a look at them herself initially,

11:03:04  19   we can do that as well.

11:03:06  20            THE COURT:  All right.  I think we might want

11:03:07  21   to take advantage of both opportunities.  That is, have

11:03:10  22   them submitted to the magistrate, have them filed with

11:03:14  23   the Court.  You can make your ex parte filing.  They

11:03:20  24   will go to the magistrate.

11:03:21  25        I suspect that she will want to meet with you

11:03:24  1    today, since everyone is here today, to make sure this

11:03:26  2    is a streamlined and speedy process.

11:03:30  3         And also, today I think we can achieve one other

11:03:33  4    objective, which is it seems to me that the discussion

11:03:36  5    about which I asked should take place, and I see no

11:03:41  6    reason why it should not today, with the assistance of

11:03:44  7    the magistrate.

11:03:44  8         My sense is that there's more room for agreement

11:03:48  9    here than disagreement.

11:03:51  10        I think while I can appreciate the government

11:03:54  11   raising the exemptions that it has, I don't think that,

11:03:58  12   really, the plaintiff is interested in some of the

11:04:01  13   things that the government is seeking to protect,

11:04:04  14   although I can appreciate the need to proceed with an

11:04:06  15   abundance of caution and raise those objections.

11:04:10  16        For instance, third-party taxpayer information, I

11:04:12  17   suspect that that's not what the plaintiff is interested

11:04:17  18   in.  I don't think they're interested in medical

11:04:19  19   information, nor do I think they're interested in

11:04:22  20   compromising law enforcement activities.

11:04:25  21        And that leaves, I think, that huge chunk in the

11:04:30  22   middle, the 1300 pages that is probably, I think that is

11:04:41  23   the information that you have categorized as falling

11:04:47  24   under the inter-agency or intra-agency memorandum,

11:04:51  25   deliberative discussions.  That, I suspect they're

| | | |
|---|---|---|
| 11:04:54 | 1 | interested in the tax convention matters. |
| 11:04:57 | 2 | And how many pages again was that?  Is it 58 pages? |
| 11:05:02 | 3 | MR. ROLE:  That would be the 6105 information? |
| 11:05:06 | 4 | THE COURT:  Yes. |
| 11:05:10 | 5 | MR. ROLE:  There's 58 pages. |
| 11:05:13 | 6 | THE COURT:  Yeah. |
| 11:05:14 | 7 | It seems to me that's where the real, the real |
| 11:05:18 | 8 | battle lies, and I suspect that a discussion, at least |
| 11:05:22 | 9 | on some parameters, might help to move things forward. |
| 11:05:27 | 10 | I suspect that there can be some agreement that the |
| 11:05:30 | 11 | parties can reach here on that.  So I'll have you meet |
| 11:05:37 | 12 | with the magistrate today. |
| 11:05:40 | 13 | I'll require the government to submit those |
| 11:05:42 | 14 | documents, unless things change today after your meeting |
| 11:05:45 | 15 | with the magistrate. |
| 11:05:46 | 16 | I suspect, and my expectation is, that things will |
| 11:05:51 | 17 | change after your meeting, and that there will be some |
| 11:05:54 | 18 | agreement and some ironing out of at least definitional |
| 11:06:05 | 19 | parameters. |
| 11:06:05 | 20 | I think that the issue on whether the -- that |
| 11:06:08 | 21 | generic finding that there will be some impairment that |
| 11:06:12 | 22 | will result if the information is disclosed, I think |
| 11:06:17 | 23 | that probably is worth some discussion; and also, |
| 11:06:21 | 24 | whether the information that was exchanged between the |
| 11:06:24 | 25 | Service and the IRB is the information that was required |

11:06:27  1    to be shared under the convention, and so would be

11:06:33  2    covered by the privilege that specifically exempts

11:06:38  3    disclosure of information shared pursuant to the

11:06:41  4    convention.

11:06:41  5        I'm not so sure that the example I gave is the

11:06:44  6    information shared pursuant to the convention, since I

11:06:48  7    think that in the ordinary course, that sort of language

11:06:54  8    contemplates specific information.

11:06:57  9        Attorney Kroblin, you said you have the convention

11:06:59  10   with you?

11:07:00  11         MR. KROBLIN:  Yes, Your Honor.

11:07:00  12       If I can respond?

11:07:02  13         THE COURT:  If you can just put it on the Elmo,

11:07:04  14   so we can all see it.

11:07:17  15         MR. KROBLIN:  Your Honor, may --

11:07:18  16         THE COURT:  Right now I just want to see it.  I

11:07:21  17   still have a few questions for Attorney Role, so --

11:07:48  18         MR. KROBLIN:  Your Honor, I would only say I'm

11:07:50  19   assuming what they're referencing.  Of course, they

11:07:53  20   don't identify any specific convention.

11:07:56  21         THE COURT:  While Mrs. Trotman is figuring it

11:07:58  22   out, Attorney Role, you can take a look at that.

11:08:00  23       Is that the convention about which you speak?

11:08:11  24         MR. ROLE:  That is the, that appears to be the

11:08:13  25   convention, Your Honor.

| | | |
|---|---|---|
| 11:08:15 | 1 | THE COURT:  All right. |
| 11:08:17 | 2 | MR. ROLE:  I have not seen it in this |
| 11:08:18 | 3 | particular form. |
| 11:08:45 | 4 | THE COURT:  All right.  Why don't you tell us |
| 11:08:46 | 5 | which section of it you believe would cover the |
| 11:08:52 | 6 | information of the species that I spoke of, that is, the |
| 11:08:58 | 7 | IRS says, "Here is what we think about the limitations |
| 11:09:03 | 8 | period." |
| 11:09:04 | 9 | MR. ROLE:  The example the Court gave. |
| 11:09:26 | 10 | MR. KROBLIN:  Your Honor, if I may? |
| 11:09:26 | 11 | THE COURT:  Yes. |
| 11:09:27 | 12 | MR. KROBLIN:  I believe if he were to refer to |
| 11:09:29 | 13 | the appendix, he might find a wide area.  It is also set |
| 11:09:33 | 14 | forth in Notice 2007-19, as well. |
| 11:10:18 | 15 | THE COURT:  All right.  And when you find it, |
| 11:10:25 | 16 | you can put it on the Elmo. |
| 11:10:27 | 17 | Mrs. Trotman, can you please... |
| 11:10:47 | 18 | MR. ROLE:  Again, the Court is talking about |
| 11:10:49 | 19 | that theoretical policy discussion, is that correct? |
| 11:10:54 | 20 | THE COURT:  Correct.  Yes. |
| 11:10:56 | 21 | MR. ROLE:  Between the... |
| 11:12:08 | 22 | I think, Your Honor, it would be Article 4, |
| 11:12:14 | 23 | paragraph 5. |
| 11:12:39 | 24 | THE COURT:  All right.  We'll have someone take |
| 11:12:41 | 25 | a look and make sure this works. |

11:12:58  1          Tell us what the article says.

11:13:01  2          MR. ROLE:  Article 4 deals generally with the

11:13:05  3  exchange of information.  And Article 5 says that, "The

11:13:10  4  provisions of the preceding paragraph shall not be

11:13:13  5  construed so as to impose on the contracting government

11:13:16  6  the obligation to supply information, the disclosure of

11:13:19  7  which would be contrary to public policy, or to disclose

11:13:23  8  information of such disclosure would identify

11:13:25  9  confidential information or seriously impair civil or

11:13:27  10  criminal tax investigation."

11:14:08  11          THE COURT:  Is there a section that would go

11:14:11  12  to -- while we're talking -- I know you referred

11:14:14  13  generally, but is there --

11:14:16  14          MR. ROLE:  I don't think there is, necessarily,

11:14:18  15  that I can see --

11:14:20  16          THE COURT:  All right.

11:14:24  17          MR. ROLE:  -- at first blush here.

11:14:24  18          THE COURT:  All right.

11:14:24  19          MR. ROLE:  I would be glad to review it

11:14:25  20  further.

11:14:26  21          THE COURT:  All right.  Yeah, I think that's

11:14:28  22  what you'll need to do.

11:14:29  23      So, assuming that there's nothing in the convention

11:14:32  24  that says that the type of information that I used in

11:14:40  25  the example is non-disclosable, then it would have to

11:14:46  1    fall under the impairment, correct?

11:14:52  2         So I'll go back to my initial question, and you can

11:14:55  3    help me with the, how does it impair, cause the

11:14:59  4    impairment about which you speak?

11:15:01  5         You said there's a finding that this would impair.

11:15:06  6    What would it impair?

11:15:08  7              MR. ROLE:  The working relationship between the

11:15:11  8    United States competent authority and the IRS and the

11:15:16  9    BIR.

11:15:16  10             THE COURT:  Okay.  Is that what the provision

11:15:18  11   says, though, a finding that would impair the working

11:15:23  12   relationship?

11:15:24  13             MR. ROLE:  That's what the finding by

11:15:25  14   Mr. O'Donnell says, yes.

11:15:27  15             THE COURT:  All right.  And what is it that

11:15:28  16   informs that finding?

11:15:31  17             MR. ROLE:  His experience as competent

11:15:34  18   authority and dealing with other treaty partners to

11:15:37  19   taxation, and the general presumption that information

11:15:42  20   and communications shared between treaty partners is

11:15:46  21   kept secret and confidential.

11:15:48  22             THE COURT:  So if the IRB didn't feel that way,

11:15:55  23   which way would that cut?

11:15:59  24             MR. ROLE:  If the IRB didn't feel that it would

11:16:01  25   impair --

11:16:01   1                    THE COURT:  Right.  There's a finding by the
11:16:03   2    Service that this would impair relations, correct?
11:16:06   3                    MR. ROLE:  That is correct.
11:16:07   4                    THE COURT:  All right.  If the IRB says, "It
11:16:11   5    really wouldn't impair our relations if this species of
11:16:14   6    information was disclosed in this manner," would that,
11:16:20   7    should that -- how should that inform the Court?
11:16:27   8        I mean, I don't have that before me now, but it
11:16:29   9    just seems to me there are two parties to that exchange
11:16:34   10   of information, to the extent it exists.  So...
11:16:38   11                   MR. ROLE:  I think there's the issue of how
11:16:43   12   much deference is given in the good-faith assertions and
11:16:49   13   representation of the agencies, both in the general
11:16:53   14   context of FOIA in asserting exemptions, and in the
11:16:56   15   context of 6105 in terms of the competent authority in
11:16:59   16   making a finding or determination that it would impair.
11:17:04   17                   THE COURT:  All right.  Okay.  All right.
11:17:07   18   Thank you, Attorney Role.
11:17:09   19                   MR. ROLE:  Thank you, Your Honor.
11:17:09   20                   THE COURT:  Attorney Kroblin.
11:17:11   21                        ARGUMENT BY THE PLAINTIFF
11:17:11   22                   MR. KROBLIN:  Your Honor, thank you.
11:17:17   23        Your Honor, with regard to this, the tax
11:17:21   24   convention, as it says in Pacific Fisheries, there was a
11:17:26   25   finding that Article 25 prevented disclosure.  And again

11:17:29  1      here there is a disclosure, we understand that there is

11:17:31  2      a disclosure provision in the tax implementation treaty

11:17:36  3      and in this additional notice that was issued, but that

11:17:40  4      disclosure, a limitation applies to third-party taxpayer

11:17:45  5      information.  And that's saying information exchanged

11:17:47  6      about individual taxpayers must be kept confidential.

11:17:50  7          But an e-mail exchange between two people with,

11:17:52  8      let's say, confidential taxpayer information attached,

11:17:56  9      the attachment would be confidential, but the e-mail

11:17:58  10     exchange may not necessarily be confidential.

11:18:02  11          THE COURT:  All right.  Well, we're talking

11:18:04  12     about a universe of 58 documents here, or 58 pages,

11:18:08  13     rather, not 58 documents.  So it seems to me that that

11:18:11  14     should be fairly easy to review and make a

11:18:18  15     determination.

11:18:18  16          Let me ask you to focus on Attorney Role's position

11:18:23  17     that it would impair the relationship, though.  It seems

11:18:26  18     to be a little bit harder to sort of get an example of

11:18:34  19     how it would impair the relationship.

11:18:37  20          What's your view on that?

11:18:39  21          MR. KROBLIN:  Well, Your Honor, they've

11:18:41  22     asserted that statement that these number of documents

11:18:44  23     would impair, and then there's no specificity with why

11:18:47  24     any particular document would impair.  It was just the

11:18:50  25     finding of this Mr. O'Donnell person, who I'm not even

11:18:53  1    sure who he is.

11:18:56  2         But I think with regard to that, I don't understand

11:18:59  3    where this position is really coming from.  The

11:19:01  4    government's brief doesn't cite any authority that

11:19:03  5    allows them to withhold because somebody in the Service

11:19:06  6    says it would impair.  I don't see any case law.

11:19:08  7         They do cite Pacific Fisheries, which doesn't hold

11:19:12  8    that.  So I'm not, I don't quite understand where

11:19:14  9    they're coming from, that just because someone in the

11:19:16  10   Service thought it would impair.

11:19:17  11        He says -- he mentions that there's an expectation

11:19:20  12   of privacy.  Well, Pacific Fisheries didn't say there

11:19:24  13   was some sort of expectation of privacy.  It said

11:19:26  14   Article 25 stated these kinds of exchanges were exempt

11:19:29  15   from disclosure.  So -- or were to be treated as

11:19:33  16   confidential.  And we don't have that in this case.

11:19:36  17        THE COURT:  All right.  And that would seem to

11:19:38  18   be something that's in the convention specifically, and

11:19:41  19   you're saying the only thing in the convention here is

11:19:43  20   something that says that you don't disclose third-party

11:19:48  21   taxpayer information.

11:19:49  22        MR. KROBLIN:  And also what Attorney Role did

11:19:51  23   cite, that you can't disclose information related to a

11:19:53  24   criminal investigation proceeding.  That was one of the

11:19:56  25   things he mentioned.  And I think it was said at Article

11:19:59  1   4.

11:19:59  2          And I don't dispute that.  But none of this is --

11:20:02  3   they've never said any of this is related to a criminal

11:20:04  4   tax proceeding.

11:20:05  5          THE COURT:  All right.

11:20:05  6      Now, I asked you a question initially when you came

11:20:08  7   up to the lectern, and that is what is it that you seek?

11:20:10  8      Is it the case that you seek that sort of

11:20:13  9   information?

11:20:13  10     When I say "that sort of information," the

11:20:17  11  information along the lines of the example I gave, that

11:20:22  12  is, what did the IRS say to the IRB, and what the IRB

11:20:26  13  say in return to the IRS, regarding the limitation

11:20:30  14  issue?

11:20:31  15         MR. KROBLIN:  Yes.

11:20:31  16         THE COURT:  All right.  Okay.

11:20:32  17         MR. KROBLIN:  And Your Honor, to just make a

11:20:36  18  point, 25 --

11:20:37  19         THE COURT:  Let me ask you, before you do that,

11:20:38  20  the other question that I asked Attorney Role, which is,

11:20:41  21  what's your view of that discussion?

11:20:44  22     The one that I asked him a yes or no to, whether it

11:20:47  23  had taken place.

11:20:49  24         MR. KROBLIN:  It was ordered, and the answer is

11:20:52  25  definitively yes.  The magistrate ordered us to have a

```
11:20:56   1    discussion at the outset, to sit down, to try to resolve
11:20:58   2    the differences.
11:21:00   3        We, in fact, sent a letter, a detailed letter
11:21:03   4    stating our objections, and we had a conversation in
11:21:07   5    addition to that, a telephonic conversation, and we did
11:21:11   6    resolve -- a couple of the matters were resolved.
11:21:14   7        But for the most part, we got this same sort of
11:21:17   8    answer we get today.
11:21:18   9        And I did come up here first, Your Honor, but I
11:21:22  10    should say the law says the burden is on the government
11:21:24  11    in this case.  And this is an evidentiary hearing, and I
11:21:28  12    submit they haven't met their burden.
11:21:30  13        THE COURT:  And you agree that they can present
11:21:32  14    their evidence by way of affidavit, when it comes to
11:21:35  15    this?
11:21:36  16        MR. KROBLIN:  Yes, Your Honor.
11:21:36  17        THE COURT:  You're just saying that what they
11:21:38  18    have submitted is insufficient?
11:21:39  19        MR. KROBLIN:  That's correct, Your Honor.
11:21:40  20        THE COURT:  All right.  But you don't dispute
11:21:42  21    that the Court could certainly try to get some more
11:21:47  22    information, and the magistrate can certainly be used
11:21:49  23    for that purpose, to at least report to the Court on
11:21:54  24    what the, what her inquiries reveal, correct?
11:21:57  25        MR. KROBLIN:  I believe the case law says that
```

11:21:58  1    one of the avenues the Court can take is an ex parte

11:22:01  2    review of documents.

11:22:03  3              THE COURT:  All right.

11:22:03  4              MR. KROBLIN:  So, yes, I believe -- but, Your

11:22:06  5    Honor, I think we can cut through some of them.  If, for

11:22:08  6    instance, all the documents, number 25 --  objections 25

11:22:10  7    and 43, they contain one is Ms. Canegata, is one of the

11:22:16  8    e-mail recipients, and exchange.  The other one was with

11:22:19  9    Barry Hart, who is the Winstrom and Strawn counsel for

11:22:23  10   the Government of the Virgin Islands.

11:22:24  11       These people are outside of what would be the

11:22:26  12   deliberative process.  I mean, this can't be covered.

11:22:30  13   So I think any, the e-mails that include the VIBIR or

11:22:36  14   the counsel for Government of the Virgin Islands would

11:22:37  15   not be part of the deliberative process, and we could

11:22:40  16   say that those could just generally be disclosed, to

11:22:43  17   narrow the -- or to reduce the number of exemptions that

11:22:46  18   need to be reviewed by the magistrate.

11:22:49  19             THE COURT:  All right.  Okay.

11:22:50  20             MR. KROBLIN:  And then -- oh, sorry, Your

11:22:52  21   Honor.  Just one other point.

11:22:55  22       A lot of these, like 54 and 55, have 30-some-odd

11:22:58  23   people listed on an e-mail.  And the government doesn't

11:23:01  24   even identify who all these people are, but yet wants to

11:23:03  25   assert, you know, attorney-client privilege or something

11:23:06   1   like that.

11:23:06   2        I mean, if we don't know who these people even are

11:23:10   3   or where they work, we don't know if it's been kept

11:23:13   4   confidential.  It's quite difficult.

11:23:17   5        THE COURT:  Yeah.

11:23:17   6        MR. KROBLIN:  Thank you.

11:23:18   7        THE COURT:  All right.  Well, it seems like

11:23:19   8   part of the problem, too, is I don't think Attorney Role

11:23:21   9   here has done all the review of some of these things.  I

11:23:25  10   think there may have been someone else in his shop who

11:23:26  11   may have assisted him with that, so he's not entirely

11:23:30  12   familiar with some these things, as I understand it.

11:23:33  13        All right.  Thank you, Attorney Kroblin.

11:23:35  14        MR. KROBLIN:  Your Honor, just one last point.

11:23:36  15   If we do have this -- if Attorney Role is now going to

11:23:39  16   make like additional objections, I mean, these

11:23:42  17   objections would not be sworn-to affidavits that would

11:23:45  18   be sufficient --

11:23:46  19        THE COURT:  No, no.  I think it's clear what

11:23:47  20   the Court has to consider.  He has already provided his

11:23:53  21   affidavits, and I think that to the extent the

11:23:56  22   magistrate needs to review these documents, I suspect

11:23:59  23   the magistrate would do this:  One, she will review the

11:24:01  24   documents.  In anticipation of that, she will have a

11:24:03  25   discussion with the parties to make sure she's not

```
11:24:05   1   wasting her time.  Because if there's agreement on
11:24:08   2   certain documents, there's no need to review those
11:24:11   3   documents.
11:24:11   4        I suspect that will take place in part today.  If
11:24:15   5   it's a little bit difficult because the documents aren't
11:24:18   6   here, the documents will be here in short order.
11:24:20   7        And I suspect there will be a report and
11:24:23   8   recommendation that follows from that.
11:24:25   9             MR. KROBLIN:  Thank you.
11:24:25  10             THE COURT:  All right.
11:24:26  11        Attorney Role?  Yes.
11:24:29  12                   ARGUMENT BY THE DEFENDANT
11:24:29  13             MR. ROLE:  Just to clarify the procedure, Your
11:24:34  14   Honor.  The exemptions are asserted by the agency.
11:24:36  15             THE COURT:  Yes.
11:24:38  16             MR. ROLE:  So they are the ones who review the
11:24:40  17   documents.
11:24:40  18             THE COURT:  Yes.  No, that's understood.  I
11:24:42  19   just wanted to make clear it wasn't just your hand, sort
11:24:45  20   of in the pot.  There were other hands and other eyes
11:24:49  21   involved.  And to be fair, others may have been making
11:24:54  22   certain recommendations that you're now here to defend.
11:24:59  23             MR. ROLE:  And the other point, to address the
11:25:02  24   6105 issue, I was reviewing the O'Donnell declaration --
11:25:09  25             THE COURT:  Yes.  Attorney Kroblin says he is
```

11:25:13    1    unaware of the authority for that declaration.

11:25:17    2              MR. ROLE:  Right.  He is the competent

11:25:18    3    authority -- he has the -- and this is all in his

11:25:21    4    declaration.  He has the authority to act under tax

11:25:23    5    treaties and under tax information exchange agreements.

11:25:27    6    And he is to administer requests for tax information

11:25:29    7    from foreign governments, as well as the submission of

11:25:31    8    such requests to foreign government --

11:25:33    9              THE COURT:  I think what he meant is the

11:25:34    10   authority to make the finding, the statutory authority.

11:25:38    11             MR. ROLE:  Right.

11:25:39    12             THE COURT:  What can you point us to, to

11:25:41    13   support that authority?

11:25:43    14             MR. ROLE:  Well, there are two things.  First,

11:25:46    15   the documents which are being, for which 6105 is being

11:25:53    16   asserted is background documents to a working agreement

11:26:00    17   for the exchange of tax information -- tax returns, the

11:26:05    18   BIR.  And this appears in paragraph 5 of Mr. O'Donnell's

11:26:10    19   declaration.  And the agreement provided that certain

11:26:16    20   information would be exchanged automatically between the

11:26:20    21   United States and the BIR.

11:26:24    22             THE COURT:  Right.  But I -- there's a finding,

11:26:27    23   correct?

11:26:27    24             MR. ROLE:  Or that --

11:26:28    25             THE COURT:  That disclosure will impair

| | | |
|---|---|---|
| 11:26:31 | 1 | relations between the BIR and the Service, correct? |
| 11:26:36 | 2 | MR. ROLE:  That's correct. |
| 11:26:37 | 3 | THE COURT:  Okay.  The authority for making |
| 11:26:39 | 4 | that finding, or what would give that finding some |
| 11:26:43 | 5 | gravity, I think is what is the question. |
| 11:26:47 | 6 | MR. ROLE:  And that's in the text of Section |
| 11:26:49 | 7 | 6105 as well. |
| 11:26:50 | 8 | THE COURT:  All right. |
| 11:26:51 | 9 | MR. ROLE:  But before that finding is made in |
| 11:26:55 | 10 | the declaration, paragraph 11, the O'Donnell declaration |
| 11:27:01 | 11 | also explains that what's being withheld are the |
| 11:27:05 | 12 | background information that related to the working |
| 11:27:07 | 13 | agreement.  And that's why that falls under the specific |
| 11:27:10 | 14 | enumerated provisions of section 6105. |
| 11:27:31 | 15 | THE COURT:  All right. |
| 11:27:15 | 16 | MR. ROLE:  So it isn't purely kind of a |
| 11:27:19 | 17 | theoretical, what would you think of this.  Obviously, |
| 11:27:26 | 18 | it was pursuant to the development of an agreement |
| 11:27:28 | 19 | between the BIR and the competent authority. |
| 11:27:31 | 20 | THE COURT:  All right.  Okay. |
| 11:27:31 | 21 | FURTHER PROCEEDINGS / SCHEDULING |
| 11:27:34 | 22 | THE COURT:  Attorney Role, how much time do you |
| 11:27:36 | 23 | need to get these documents to make your ex parte |
| 11:27:41 | 24 | submission? |
| 11:27:41 | 25 | I suspect you can do the 58 pages, or have your |

11:27:43  1    agency send that in, probably by tomorrow or --

11:27:48  2         MR. ROLE:  I'll be back in the office tomorrow.

11:27:50  3    I can send it Fed-Ex tomorrow.  So that would be back.

11:27:54  4    And then the Court wants the (b)(5) documents.  That

11:27:59  5    will take a little longer, but I can certainly do that

11:28:02  6    by next week.

11:28:02  7         THE COURT:  All right.  Let's do that, then.

11:28:04  8    Send what you have, when you can.  I think we'll start

11:28:06  9    with the smaller packets.  I think there's the 58

11:28:09  10   documents that cover the 6105, -03 issues.

11:28:15  11       I think there are 40 documents, or 40 pages,

11:28:17  12   rather, that cover the law enforcement information.

11:28:25  13       And then I think there are 1300 that cover the

11:28:28  14   inter- and intra-agency deliberative issue.

11:28:33  15       So you can -- why don't you take a -- I'm sure you

11:28:35  16   can probably get those to the Court within a week.  So

11:28:38  17   why don't we say by next week, Friday, if you can submit

11:28:41  18   those to the Court.

11:28:42  19       Is that, is that enough time?

11:28:42  20        MR. ROLE:  There --

11:28:45  21        THE COURT:  You want till next -- till the

11:28:47  22   Monday after?  I should give you some dates, too, if I

11:28:51  23   get a calendar, and then I'll -- Mrs. Trotman, I need a

11:28:54  24   calendar.

11:28:54  25        MR. ROLE:  The considerations I have, Your

11:28:56  1    Honor, is, I have the documents which have been withheld

11:28:59  2    in part, I know, at my office.  I don't know whether I

11:29:05  3    have the documents which have been withheld in full.

11:29:07  4         The other consideration is, I may have a trial the

11:29:10  5    end of next week.  But that wouldn't -- it's only a

11:29:13  6    one-day trial.  It would not delay things further.  But

11:29:16  7    I can certainly try and have everything to the Court

11:29:18  8    next week, but there's a possibility there might be --

11:29:23  9              THE COURT:  All right.  Well, the smaller sets,

11:29:25  10   the 50 law enforcement and the 58 that deal with 6105

11:29:31  11   and -03, why don't we say if you can have those to the

11:29:36  12   Court by next week Tuesday.  Next week Tuesday is

11:29:44  13   September 6th.  So if you can get those -- is that a

11:29:47  14   workable time for you?

11:29:52  15             MR. ROLE:  Although that's a week from Tuesday,

11:29:56  16   Your Honor, if you --

11:29:57  17             THE COURT:  That is a week from Tuesday.  Oh,

11:29:59  18   what is next week Tuesday's date, then?

11:30:01  19             MR. ROLE:  The 30th, I believe.

11:30:09  20             THE COURT:  All right.  Next week Tuesday, the

11:30:14  21   30th, I guess.

11:30:15  22        And then if you can get the other 1300, can you get

11:30:19  23   that to us by the 6th of September?

11:30:23  24        Is that enough time?

11:30:27  25             MR. ROLE:  I think we should be able to do

| | | |
|---|---|---|
| 11:30:29 | 1 | that, Your Honor. |
| 11:30:29 | 2 | THE COURT:  Well, tell me how much time you |
| 11:30:32 | 3 | think you need, so you can meet the Court-imposed |
| 11:30:38 | 4 | deadline. |
| 11:30:42 | 5 | MR. ROLE:  The consideration I have is the |
| 11:30:44 | 6 | documents which have been withheld in part, the copies |
| 11:30:47 | 7 | that I have would have the portions withheld, black, |
| 11:30:52 | 8 | blacked out, and the exemption noted next to it. |
| 11:30:56 | 9 | So there may be need to go through the documents |
| 11:30:59 | 10 | which have not been redacted and mark what portion has |
| 11:31:05 | 11 | been withheld, and to note the exemption. |
| 11:31:10 | 12 | THE COURT:  All right.  You're not saying that |
| 11:31:12 | 13 | the Court can't look at the entire document? |
| 11:31:15 | 14 | MR. ROLE:  No, no, no.  But the Court won't be |
| 11:31:17 | 15 | able to tell, if we just produced the documents. |
| 11:31:17 | 16 | THE COURT:  I see. |
| 11:31:20 | 17 | MR. ROLE:  The unredacted documents do not have |
| 11:31:22 | 18 | the exemptions marked and the portion that's being |
| 11:31:26 | 19 | withheld. |
| 11:31:27 | 20 | THE COURT:  Okay. |
| 11:31:29 | 21 | MR. ROLE:  So we would have to provide an |
| 11:31:32 | 22 | indication to the Court, you know, block out, this is |
| 11:31:34 | 23 | being withheld and this is the exemption. |
| 11:31:35 | 24 | THE COURT:  Well, just tell me how much time |
| 11:31:37 | 25 | you need. |

| | | |
|---|---|---|
| 11:31:38 | 1 | Would two weeks be sufficient? |
| 11:31:43 | 2 | MR. ROLE:  I think it would be, if I could -- I |
| 11:31:44 | 3 | would need to consult with the Service and see if that |
| 11:31:54 | 4 | -- and if I could come back to the Court and perhaps |
| 11:31:56 | 5 | seek additional time, if more is needed? |
| 11:31:59 | 6 | THE COURT:  Well, this matter was filed, when? |
| 11:32:00 | 7 | In 2009.  I think it's time to close this out -- |
| 11:32:00 | 8 | MR. ROLE:  Right.  And I -- |
| 11:32:03 | 9 | THE COURT:  -- one way or the other.  So I want |
| 11:32:04 | 10 | to impose some dates, and I want them to not be |
| 11:32:08 | 11 | suggestions, but dates that work.  That's why I'm trying |
| 11:32:10 | 12 | to find out how much time you need. |
| 11:32:12 | 13 | Let's just deal with the small documents.  The 50 |
| 11:32:15 | 14 | documents that deal with law enforcement, the 58 that |
| 11:32:17 | 15 | deal with 6105 and -03, can you get those to the Court |
| 11:32:22 | 16 | by next week? |
| 11:32:25 | 17 | MR. ROLE:  Yes.  Yes. |
| 11:32:25 | 18 | THE COURT:  All right.  The 1300 documents, |
| 11:32:27 | 19 | what do you need, two weeks to get those to the Court? |
| 11:32:30 | 20 | Do you want three weeks? |
| 11:32:33 | 21 | I'll give you three weeks. |
| 11:32:34 | 22 | MR. ROLE:  Three weeks, that will be fine. |
| 11:32:36 | 23 | THE COURT:  All right. |
| 11:32:36 | 24 | MR. ROLE:  And certainly, if we can do that |
| 11:32:39 | 25 | earlier -- |

11:32:40  1           THE COURT:  Certainly, that would be
11:32:42  2   appreciated.
11:32:55  3       And then I'll have the parties meet with the
11:32:58  4   magistrate.  I'll see if she's available to meet with
11:33:00  5   you shortly.
11:33:01  6       But my hope is that you will obviate the need for
11:33:05  7   the magistrate to go through all the documents, after
11:33:07  8   you meet with her, since I think that it sounds to me
11:33:11  9   like there is some room for agreement here.
11:33:16  10      For instance, I suspect if there are medical
11:33:18  11  documents that you have withheld, you don't even need to
11:33:22  12  bother with those.
11:33:23  13      Third-party documents, we don't need to bother with
11:33:26  14  those.  We're just in those limited groups.  And I think
11:33:29  15  that that grouping can even be narrowed a bit after some
11:33:33  16  good, hard discussion between the parties.
11:33:36  17      For instance, you need a working framework for what
11:33:39  18  is deliberative.  And it seems to me there might be
11:33:44  19  certain things that the plaintiffs might be able to give
11:33:47  20  on, and certain movement that the government might be
11:33:50  21  able to make.  So that's my hope and expectation with
11:33:53  22  this meeting with the magistrate.
11:33:57  23      All right.  So the government will submit its
11:34:01  24  documents by -- all the smaller documents to the Court
11:34:31  25  by the 31st, that is, the 50 law enforcement and the 58

11:34:36  1    6105, 6103 documents.

11:34:40  2         And the other group, I said I would give you

11:34:43  3    three weeks.  I'll do three weeks from Friday, which

11:34:46  4    would be September the 16th.

11:34:54  5         Is that enough time, Attorney Role?

11:34:57  6              MR. ROLE:  I believe so, Your Honor.

11:35:00  7              THE COURT:  All right.  And as I understand it,

11:35:02  8    you have the documents.  It's just a matter of getting

11:35:05  9    them to the Court.  All right.  So by the 16th.

11:35:10  10        And then, I think after you meet with the

11:35:12  11   magistrate, she will set up a time when you will next

11:35:15  12   meet with her, to the extent necessary.  It will

11:35:19  13   probably be more a date to save.  It may not be

11:35:22  14   necessary that you meet with her again.  But I expect

11:35:24  15   that we should have this matter resolved fairly soon.

11:35:27  16        Now, is there anything else that the government

11:35:29  17   wants to produce?

11:35:30  18        I think I scheduled this as an evidentiary hearing.

11:35:32  19   I know you've submitted affidavits, detailed affidavits.

11:35:37  20   The thing that was missing were the documents.

11:35:40  21        Is there anything else that the government wishes

11:35:41  22   to present for the Court to consider?

11:35:47  23        Do you have any witnesses you want to present

11:35:49  24   today, since we're here for an evidentiary hearing?

11:35:53  25              MR. ROLE:  Your Honor, I was unaware that this

| | | |
|---|---|---|
| 11:35:54 | 1 | was scheduled as an evidentiary hearing.  It was |
| 11:35:57 | 2 | scheduled as a hearing on dispositive motions. |
| 11:35:59 | 3 | THE COURT:  I see.  All right. |
| 11:36:01 | 4 | Is there anything that you wish to present? |
| 11:36:05 | 5 | MR. ROLE:  Nothing further at this time. |
| 11:36:07 | 6 | THE COURT:  Okay.  Is there anything that you |
| 11:36:09 | 7 | wish to present at all? |
| 11:36:10 | 8 | MR. ROLE:  I don't believe so, Your Honor. |
| 11:36:12 | 9 | THE COURT:  All right.  At any time? |
| 11:36:14 | 10 | I just want to make sure that your universe of |
| 11:36:17 | 11 | presentation will be your documents and the affidavits. |
| 11:36:18 | 12 | Is that correct? |
| 11:36:20 | 13 | MR. ROLE:  That's correct; and the motion, yes, |
| 11:36:22 | 14 | Your Honor. |
| 11:36:22 | 15 | THE COURT:  Of course.  Yes. |
| 11:36:23 | 16 | So then we'll have all the evidence. |
| 11:36:24 | 17 | Is there anything that, Attorney Kroblin, that you |
| 11:36:28 | 18 | want to present to the Court? |
| 11:36:30 | 19 | MR. KROBLIN:  My understanding is that the |
| 11:36:32 | 20 | burden is basically on the government. |
| 11:36:33 | 21 | THE COURT:  Right.  But that doesn't mean that |
| 11:36:34 | 22 | you don't have an opportunity to present things, if you |
| 11:36:36 | 23 | wish to. |
| 11:36:37 | 24 | Is there anything you want to present?  Any |
| 11:36:39 | 25 | evidence you wish to present? |

| | | |
|---|---|---|
| 11:36:40 | 1 | MR. KROBLIN:  Based on the evidence that's been |
| 11:36:42 | 2 | presented so far, what he intends to rely on, no, we |
| 11:36:44 | 3 | have nothing further, Your Honor. |
| 11:36:45 | 4 | THE COURT:  All right.  Very good. |
| 11:36:47 | 5 | Okay.  Thank you, Counsel, for a well-argued, |
| 11:36:52 | 6 | well-presented matter. |
| 11:36:53 | 7 | What we'll do is, if you can just bear with me for |
| 11:36:56 | 8 | a little while, Mrs. Trotman will let you know, and I'll |
| 11:37:00 | 9 | make sure that the magistrate is available to meet with |
| 11:37:02 | 10 | you. |
| 11:37:03 | 11 | And let me do this:  Let me urge the parties to try |
| 11:37:05 | 12 | to find some common ground that you can occupy.  It |
| 11:37:09 | 13 | seems to me that this is a case where we can probably |
| 11:37:15 | 14 | resolve it short of the Court's intervention. |
| 11:37:19 | 15 | I think if reasonable heads meet at the table, I |
| 11:37:25 | 16 | think we can have some sort of agreement here.  All |
| 11:37:29 | 17 | right.  So I urge the parties to work hard.  The |
| 11:37:32 | 18 | magistrate will do whatever she can to help.  And I'm |
| 11:37:35 | 19 | available, also, if there's any problem. |
| 11:37:36 | 20 | All right.  Thank you Counsel. |
| 11:37:38 | 21 | MR. KROBLIN:  Thank you, Your Honor. |
| 11:37:45 | 22 | MR. ROLE:  Thank you, Your Honor. |
| 11:38:01 | 23 | (Court in recess, 11:38 a.m.) |
| 11:38:01 | 24 | |
| | 25 | --- |

1

2                         CERTIFICATE

3

4              This document is hereby certified

5            to be a true and accurate transcript

6                of the foregoing proceedings.

7

8

9        /s_____    _____
                  Chandra Kean, RMR              DATE
10              Official Court Reporter

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25